**CUSTOM HARDWARE ENGINEER-ING & CONSULTING, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. SC 91415.**

Supreme Court of Missouri, En Banc.

Jan. 17, 2012.

Matthew D. McBride, Carl M. Markus, Lashly & Baer PC, St. Louis, for Custom Hardware.

James R. Layton, Solicitor General, Attorney General's Office, Jefferson City, for the Director.

RICHARD B. TEITELMAN, Chief Justice.

Custom Hardware Engineering, Inc. (CHE) appeals an Administrative Hearing Commission (AHC) decision determining that CHE is liable for use tax plus interest and additions to tax on its purchases of parts for use in fulfilling maintenance contracts. CHE asserts that it is not liable for any use tax because it did not use the parts and, instead, retained them for "temporary storage" as provided in section 144.605(13), RSMo 2000.[1] The record demonstrates that CHE used the parts for testing and certification on behalf of its customers. Therefore, CHE is liable for use tax as provided in section 144.610. The AHC decision is affirmed.

## FACTS

CHE performs computer hardware maintenance and repair on "enterprise class" machines such as mainframe computers. CHE provides the services, parts and equipment required for such maintenance. The parts at issue in this case are those that CHE purchased from vendors outside the state of Missouri. Those parts were shipped to CHE at its Missouri headquarters. CHE tested the parts and certified them for use by its customers. The testing and certification process lasted five to seven days. After testing and certifying the parts, CHE shipped the parts to its

---

1. All statutory citations are to RSMo 2000.

customers. CHE retains title to the parts until they are utilized by the customer.

CHE did not file use tax returns on its purchases of parts from out-of-state vendors. The director of revenue audited CHE for the April 2001 through March 2006 tax period.[2] The director determined that CHE owed sales taxes. CHE paid the sales tax. The director also determined that CHE owed use taxes and proposed an assessment of "$19,756.49, with interest at $3,811.87 and additions of 5%, at $942.48, for a total of $24,519.84."

CHE paid the use tax under protest and filed a complaint with the AHC. CHE noted that section 144.605(13) provides that the term "use" does not include the "temporary storage of property in this state for subsequent use out of this state. . . ." CHE argued that its testing and certification of the computer parts was not a taxable use and, instead, was non-taxable "temporary storage." The AHC concluded that the testing and certification process was not temporary storage and constituted a taxable "use" under section 144.610. The AHC determined that CHE's use tax liability was $57,030.77 and that CHE owed additions totaling $2,396.55. The AHC credited the $24,519.84 CHE paid under protest. CHE filed a petition for review of the AHC decision.

### ANALYSIS

■ This Court has jurisdiction to review the AHC's decision pursuant to Mo. Const. article V, section 3, because the case involves construction of state revenue laws. The AHC's interpretation of revenue laws is reviewed de novo. *DST Sys.,*

*Inc. v. Dir. of Revenue,* 43 S.W.3d 799, 800 (Mo. banc 2001). The AHC's decision shall be affirmed if: (1) it is authorized by law; (2) it is supported by competent and substantial evidence on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the General Assembly. *Section 621.193.* The AHC's factual findings will be upheld if the findings are supported by substantial evidence in the record. *MFA Petroleum Co. v. Director of Revenue,* 279 S.W.3d 177, 178 (Mo.2009).

### I. Temporary Storage

■ Section 144.610 imposes a use tax on out-of-state purchases "for the privilege of storing, using or consuming within this state any article of tangible personal property. . . ." Section 144.605(13) defines "use" as "the exercise of any right or power over tangible personal property incident to the ownership or control of that property, except that it does not include the temporary storage of property in this state for subsequent use outside the state. . . ." The computer parts that CHE purchased out of state and then brought to Missouri for testing and certification are subject to the section 144.610 use tax if: (1) CHE exercised a right or power incident to the ownership or control of the parts; and (2) CHE's exercise of a right or power of ownership or control over the computer parts was more than "temporary storage."

CHE does not dispute that it exercised a right and power incident to ownership and control of the computer parts. CHE received the parts, removed them from the

**2.** CHE and the director agreed to use the 2005 calendar year as a sample because CHE's business model was consistent throughout the audit period. The director determined the cost of the parts CHE purchased in 2005 and then divided that amount by 12 to reach a monthly average cost of the parts purchased. The director determined the total amount at issue by multiplying the monthly average cost by the number of months in the audit period.

packaging, and then subjected the parts to a five-to-seven-day testing and certification process. Therefore, the dispositive issue is whether CHE's testing and certification went beyond "temporary storage" and, instead, constituted a taxable "use."

There is no statutory definition of "temporary storage." The word "temporary" means "lasting for a time only; existing or continuing for a limited time." WEBSTER'S THIRD NEW INT'L DICTIONARY (1966). Section 144.605(10) defines "storage" as "any keeping or retention in this state of tangible personal property purchased from a vendor, except property for sale or property that is temporarily kept or retained in this state for subsequent use outside the state."

To test and certify the computer parts, CHE also had to store those parts temporarily. However, the record demonstrates that CHE did more than simply provide a warehouse for temporary storage and re-shipping. As required by its contracts, CHE unpackaged, inspected, tested, and repackaged the parts. CHE then certified the products for use and shipped them to its customers. By performing those functions, CHE did more than simply keep or retain the parts for a limited time period. Instead, CHE engaged in a taxable "use" as provided in section 144.610. The AHC correctly concluded that CHE engaged in a taxable "use."

## II. *Resale Exemption*

■ In its second point, CHE asserts that it is entitled to a resale exemption from the use tax. This argument is foreclosed by *ICC Management, Inc., v. Director of Revenue*, 290 S.W.3d 699 (Mo. banc 2009). In *ICC*, this Court held that the resale exemption in section 144.615(6) is only available when the property at issue is purchased for a subsequent taxable sale. *Id.* at 703. CHE does not purchase

the computer parts for a subsequent taxable sale. Rather than reselling the parts, CHE purchases the parts its customers require and then inspects, tests, and certifies those parts for use in its customer's machines. CHE asks this Court to overturn *ICC.* This Court declines to do so.

■ In its third point, CHE argues that it should not have to pay a use tax on contracts made with public entities that are not required to pay sales or use taxes. The fact that some of CHE's customers are exempt from state sales and use taxes does not change the fact that CHE's activities constitute a taxable "use" under section 144.610. There is no applicable resale exemption.

## III. *Increase in Deficiency Assessment*

■ In its fourth point, CHE asserts that the AHC is not authorized to increase the amount of tax liability calculated by the director in the post-audit assessment. This is incorrect. Section 621.050.1 states that "[e]xcept as otherwise provided by law, any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue." The AHC's review of CHE's claims is governed by section 621.050.2:

In any proceeding before the administrative hearing commission under this section the burden of proof shall be on the taxpayer except for the following issues, as to which the burden of proof shall be on the director of revenue:

. . .

(3) Whether the taxpayer is liable for any increase in a deficiency where such increase is asserted initially after the notice of deficiency was mailed and a protest filed. . . .

Section 621.050 provides that CHE bears the burden of proving either it is not liable for use tax or is liable for less than what the director assessed. In contrast, the director bears the burden of proving "any increase in a deficiency." By specifying that the director bears the burden of proving any increase in a deficiency, section 621.050.2(3) necessarily assumes the AHC's authority to increase CHE's use tax liability above that determined by the director.

The AHC's authority to alter the director's assessment reflects the fact that the AHC is "an adjunct executive agency [exercising] . . . independent and impartial decisionmaking authority in disputes between agencies and those persons affected by their actions." *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 20 (Mo. banc 1990) (quoting *State Tax Commission v. Administrative Hearing Commission*, 641 S.W.2d 69, 75 (Mo. banc 1982)). In *Nichols*, the Court held that the AHC is not bound by the director's notice of tax deficiency because the AHC decision becomes the administrative action of the agency involved. *Nichols*, 796 S.W.2d at 20. Because the AHC announces the agency decision, the AHC does not exceed its authority by increasing the director's assessment. *Id.* The AHC had the authority independently to determine CHE's tax liability and, if necessary, increase the liability initially determined by the director.

### IV. *Additions*

CHE's final point is that the AHC should not have assessed additions to its tax liability because it is not liable for use taxes. This point fails because the AHC correctly determined that CHE is liable for use taxes.

### *CONCLUSION*

The AHC decision is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., and PRITCHETT, Sp.J., concur.

DRAPER, J., not participating.