**PF GOLF, LLC, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. SC 92663.

Supreme Court of Missouri,
En Banc.

July 16, 2013.

---

Jeremiah J. Morgan, Attorney General's Office, Jefferson City, for the Director.

Edward F. Downey and Carol L. Iles, Bryan Cave LLP, Jefferson City, for PF Golf.

**RICHARD B. TEITELMAN, Judge.**

The Director of Revenue appeals a decision of the Administrative Hearing Commission holding that PF Golf, LLC, owes no sales tax on golf cart rentals. The commission determined, pursuant to section 144.020.1(8)[1] and *Westwood Country Club v. Director of Revenue,* 6 S.W.3d 885 (Mo. banc 1999), that PF Golf owes no sales taxes on golf cart rentals because PF Golf previously paid sales tax on its purchase or lease of the carts. The commission's decision is affirmed.

## I. Facts

At all relevant times, PF Golf owned and operated the Golf Club at Pevely Farms. The golf course is open to the public. PF Golf purchased and paid sales tax on golf carts for use at the Pevely Farms course. PF Golf requires its customers to pay for and use a golf cart. The only exceptions are golfers who elect to walk and participants in competitive events in which the rules of competition prohibit the use of golf carts. For daily play, the cart fee was $22.50 per round. For those with an annual pass, the cart fee was fifty percent of the charge for the annual pass.

PF Golf priced its daily and annual golf fees and cart rentals as one price. However, all golfers receive a receipt which separately itemizes the greens fees and the cart rental. PF Golf collected and remitted sales tax for the greens fees, but did not collect or remit sales tax for the cart rentals.

The director issued an assessment of unpaid sales taxes on the golf cart rentals. The director asserted that the cart rentals were mandatory, and, therefore, subject to sales tax regardless of the fact that PF Golf had paid sales tax when it purchased the golf carts. The director's unpaid assessments totaled $121,925.95 plus interest.

---

1. All statutory citations are to RSMo Supp. 2012.

PF Golf filed a petition appealing the director's decision. The commission issued a decision finding that PF Golf "is not subject to sales tax for its rental of golf carts to customers" during the relevant tax periods. The director appeals. This Court has jurisdiction. Mo. Const. Art. V, section 3.

## II. Standard of Review

■ The commission's decision shall be affirmed if: (1) it is authorized by law; (2) it is supported by competent and substantial evidence on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the General Assembly. Section 621.193. The commission's interpretation of revenue laws is subject to de novo review. *Custom Hardware Engineering & Consulting, Inc. v. Dir. of Revenue*, 358 S.W.3d 54, 56 (Mo. banc 2012). The commission's findings of fact will be upheld if the findings are supported by substantial evidence on the whole record. *Id.*

## III. Analysis

■ Resolution of this case relies on the interplay between sections 144.020.1(2) and 144.020.1(8). The director asserts that section 144.020.1(2) governs this case because it levies "[a] tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement." A golf course is a "place of amusement." *See Old Warson Country Club v. Director of Revenue*, 933 S.W.2d 400, 403 (Mo. banc 1996). Golfers paid fees for the use of carts. Therefore, the director argues that PF Golf should have collected and remitted sales taxes on the fees charged for use of the golf carts.

■ PF Golf relies on section 144.020.1(8) and this Court's opinion in *Westwood Country Club v. Director of Revenue*, 6 S.W.3d 885 (Mo. banc 1999). Section 144.020.1(8) imposes a tax on fees charged for the rental or lease of personal property unless the property was purchased under "sale at retail" conditions or sales taxes were previously paid by the renter or seller on the original purchase or lease of the property. *Westwood*, 6 S.W.3d at 888. In *Westwood*, this Court applied section 144.020.1(8) to a similar situation in which the director assessed sales taxes against a private golf club's rental of golf carts to its members. This Court rejected the director's argument that section 144.020.1(2) applied and, instead, held that "section 144.020.1(8) is a more specific statute than section 144.020.1(2) in that it expressly deals with the lease or rental of personal property upon which sales tax has already been paid." *Id.* at 889. As was the case in *Westwood*, section 144.020.1(8) is the applicable statute in this case.

Applying section 144.020.1(8) to the facts of this case demonstrates that the commission reached the correct result. PF Golf paid sales tax on its purchases or leases of golf carts prior to renting the carts to its customers. The fact that PF Golf paid sales tax on its initial acquisition of the golf carts means that it is not required to collect sales tax on the subsequent rental of those carts to its customers. *Westwood*, 6 S.W.3d at 889. PF Golf, like the golf club in *Westwood*, did not have to charge a sales tax on cart rentals to its customers.

■ Alternatively, the director argues that PF Golf did not rent golf carts and, instead, sold rounds of golf that included the use of a golf cart. If PF Golf did not rent carts and simply sold rounds of golf, then section 144.020.1(8) is inapplicable. This argument fails because there is substantial evidence in the record supporting the commission's factual determination

that PF Golf rents golf carts. PF Golf, like the golf club in *Westwood,* grants golfers the right to use its golf carts for a fee pursuant to certain terms and conditions. Each golfer's receipt separately itemized the green fees and the golf cart rental. Although it is true that almost every golfer at Pevely Farms elects to use a cart, this fact does not alter the nature of the transaction. A mandatory rental is still a rental. The commission's finding that PF Golf rented golf carts is supported by substantial evidence in the record.

The director also argues that this case is analogous to *Southern Red–E–Mix Co. v. Director of Revenue,* 894 S.W.2d 164 (Mo. banc 1995), in which this Court held that a delivery charge for concrete was taxable because it was part of the "gross receipts" for the taxable sale of the concrete. Similarly, the director asserts that the cart rentals at Pevely Farms are mandatory, are essentially a part of the greens fee and, therefore, are subject to the sales tax. *Southern Red–E–Mix* is inapposite because that case did not involve the application of section 144.020.1(8) regarding taxation on fees charged for the rental or lease of personal property.

Finally, the director argues that section 144.020.1(8) does not apply because of the "Boat and Outboard Motor" exception in the statute. This exception provides that the "rental or lease of boats and outboard motors" is never considered a "sale, charge, or fee to, for or in places of amusement" and that all such rentals shall be taxed under the provisions of the sales tax laws applicable to motor vehicles and trailers. The "Boat and Outboard Motor" exception does not apply because the "exception is merely intended to be sure that boats and outboard motors are taxed under the 'laws for motor vehicles and trailers.'" *Six Flags Theme Parks, Inc. v. Director of Revenue,* 179 S.W.3d 266, 270 (Mo. banc 2005)(quoting section 144.020.1(8)).

## IV. Conclusion

PF Golf paid sales tax on its purchase or lease of the golf carts rented to customers. Therefore, pursuant to section 144.020.1(8) and *Westwood,* PF Golf was not required to charge sales tax on the golf cart rentals. The commission's decision is affirmed.

RUSSELL, C.J., BRECKENRIDGE, FISCHER and DRAPER, JJ., concur.

STITH, J., dissents in separate opinion filed

WILSON, J., concurs in opinion of STITH, J.

LAURA DENVIR STITH, Judge.

The majority holds that tax is not owed on PF Golf's rental of the golf carts to its customers because PF Golf previously had paid tax on its initial purchase of the carts. While I agree that double taxation should be avoided, I disagree that Missouri's taxing statutes give the taxpayer the choice whether it would prefer to pay tax when it purchases an item of personal property that it then intends to rent to others or instead to collect tax from its rental customers at the time it rents the item of personal property to them. Yet that is what the majority holds when it states:

> The fact that PF Golf paid sales tax on its initial acquisition of the golf carts means that it is not required to collect sales tax on the subsequent rental of those carts to its customers. *Westwood,* 6 S.W.3d at 889.

*Op.* at 890. This statement is based on *Westwood's* paraphrasing of the language of section 144.020.1(8) to state that it imposed a tax on purchases unless "sales taxes were previously paid by the renter or seller on the original purchase or lease

of the property." *Westwood,* 6 S.W.3d at 888. While *Westwood* was accurate in its description of what section 144.020.1(8) provides when the one who is renting equipment to customers itself previously rented or leased the equipment, it is incomplete in its statement of what occurs when one who *purchased* personal property subsequently rents it—the case before us today.[1]

Section 144.020.1(8) states in relevant part that the state shall levy:

(8) A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property *had previously purchased the property under the conditions of "sale at retail"* or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the ... renter ... shall not apply or collect the tax on the subsequent ... rental ... receipts from that property, (emphasis added).

As is self-evident, section 144.020.1(8) provides that a company that rents out personal property to another must pay a 4–percent tax on the rental charge *unless* the renter previously had paid taxes when either: (1) it had itself initially purchased the property under the conditions of "sale at retail," or (2) it had itself initially leased or rented the property.

Because PF Golf purchased rather than leased or rented the golf carts that it then rented to those who played on its course, the relevant provision of subdivision (8) is the portion governing those who purchase an item of personal property under the conditions of "sale at retail." It therefore can take advantage of this exception only if it purchased the personal property under conditions of sale at retail. *Westwood,* and the majority in reliance on it, simply ignore the "sale at retail" requirement when stating that any previous purchase invokes the exemption.

The record shows that PF Golf did not purchase the carts under conditions of a sale at retail. A sale at retail is defined by Missouri law as "any transfer ... of the ownership of, or title to, tangible personal property to the purchaser, *for use or consumption and not for resale in any form* as tangible personal property, for a valuable consideration." *§ 144.010(11)* (emphasis added). "Sale" is defined to include "any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for valuable consideration ..." *§ 144.010(10).*

Therefore, a sale at retail occurs when the purchaser takes ownership of tangible personal property for the purchaser's own use or consumption. A sale at retail does *not* occur if the property instead is held for resale, whether that resale is in the form of another sale or in the form of some other exchange or barter, conditional or otherwise—such as a rental or lease—because a sale at retail is for consumption, not resale.

Here, PF Golf agrees that it bought the golf carts in question so it could rent them to its customers, as confirmed by the fact that it charged for their use. Because PF Golf did not purchase them under conditions of a sale at retail, it does not qualify for the tax exception set out in section 144.020.1(8).

Again, the majority's contrary holding is based on its reading of *Westwood* to permit the purchaser of a golf cart simply to

---

**1.** *Westwood* references the RSMo. Supp.1998 version of section 144.020. The relevant portions of the 1998 version are identical to those in the current RSMo. Supp.2012 publication. All statutory citations in this dissent are to RSMo Supp.2012.

choose whether to pay tax at the time of purchase or instead to collect tax at the time of rental regardless of whether its purchase qualified as a "sale at retail." *Westwood*, 6 S.W.3d at 889 (quoted by majority *ante, op.* at 890).

Of course, *Westwood* could not expand the tax liability provisions beyond those provided for in section 144.020.1. If *Westwood* did purport to permit one who purchased golf carts *not* under conditions of sale at retail to avoid paying taxes, then it would have been in error. But that issue does not appear to have been raised in *Westwood*. The opinion nowhere addresses the essential statutory question whether the club's initial acquisition of the golf carts was by sale at retail; to the contrary, it repeatedly notes that the carts had come from "purchases or leases" by the club without bothering to clarify which was the case or if they were a mix of both. Without any reason to focus on the distinction between purchases under conditions of sale at retail versus purchases for resale, *Westwood* simply used a shorthand paraphrase of section 144.020.1(8). Such paraphrases can cause confusion when applied in a different context, as the majority does

here. They cannot change the meaning of the statute. To the extent that *Westwood* and similar cases hold otherwise, I would overrule them.[2]

This does not mean that PF Golf is subject to double taxation; it means that it should not have paid tax on its purchase of the golf carts because it was a sale at retail. Whether it would be entitled to a refund of or credit for that tax is not before the Court.

There are two additional points of the *Westwood* analysis that are in error and that should be corrected now to avoid future confusion. First, for the reasons more fully set out in the comprehensive discussion of this issue in the dissent in *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 179 S.W.3d 266 (Mo. banc 2005) *(Six Flags II)* (Stith, J., dissenting), *Westwood* erred in holding that subdivision (8) of section 144.020.1 is narrower than subdivision (2) of that statute.[3] Subdivision (2) governs taxes on fees or charges paid in or to a place of amusement. It applies, therefore, only in a narrow category of commerce—places of amusement.[4] Sec-

---

**2.** In *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 530 (Mo. banc 2003) *(Six Flags I)*, this Court held that the theme park did not owe taxes on the rental of its video game machines. This Court concluded that tax was not owed under subdivision (8) because the purchaser paid tax on the machines when purchased. This would be overruled to the extent that it misinterpreted subdivision (8) to hold that simply because tax was paid on property at the time of purchase, tax is not thereafter due at the time of rental of that property.

In *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 410–11 (Mo. banc 2003), a bowling alley charged its customers a fee to use bowling shoes. Relying on *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596 (Mo. banc 1977), this Court held that this fee is subject to the amusement tax under section 144.020.1(2). This outcome is consistent with

the legal conclusions advocated in this dissent.

**3.** *Six Flags II* involved sales tax paid on fees collected by the operator of a theme park on the rental of inner tubes. This Court held that the inner tubes were not subject to sales tax because subdivision (8) does not impose a tax on property rentals when the property was subject to taxation at the time of purchase. Relying on *Westwood*, this Court further determined that the taxes could not be collected under subdivision (2) because subdivision (8) is a more specific statute. 179 S.W.3d 266. I now would overrule *Six Flags II* as to the latter holding.

**4.** Subdivision (2) states: "A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events...."

tion 144.020.1(8), on the other hand, applies to all sales at retail, rentals or leases of personal property.[5] *Westwood* simply was wrong in stating that subdivision (8) is narrower than subdivision (2). The contrary is self-evidently true from a reading of the two provisions. Applying these principles here, as subdivision (2) has no exceptions for resales or rentals and instead requires tax be paid on all fees paid in or to a place of amusement, it requires tax be paid on the rental of carts to customers. Period.

**5.** Subdivision (8) states:

A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the lessor, sublessor, renter or subrenter shall not apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property. The purchase, rental or lease of motor vehicles, trailers, motorcycles, mopeds, motortricycles, boats, and outboard motors shall be taxed and the tax paid as provided in this section and section 144.070. In no event shall the rental or lease of boats and outboard motors be considered a sale, charge, or fee to, for or in places of amusement, entertainment or recreation nor shall any such rental or lease be subject to any tax imposed to, for, or in such places of amusement, entertainment or recreation. Rental and leased boats or outboard motors shall be taxed under the provisions of the sales tax laws as provided under such laws for motor vehicles and trailers. Tangible personal property which is exempt from the sales or use tax under section 144.030 upon a sale thereof is likewise exempt from the sales or use tax upon the lease or rental thereof.

**6.** Section 144.020.1 states, in its entirety:

A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows: (1) Upon every retail sale in this state of tangible personal property, including but not limited to motor vehicles, trailers, motorcycles, mopeds, motortricycles, boats and outboard motors, a tax equivalent to four percent of the purchase price paid or charged, or in case such sale involves the exchange of property, a tax equivalent to four percent of the consideration paid or charged, including the fair market value of the property exchanged at the time and place of the exchange, except as otherwise provided in section 144.025;

(2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events;

(3) A tax equivalent to four percent of the basic rate paid or charged on all sales of electricity or electrical current, water and gas, natural or artificial, to domestic, commercial or industrial consumers;

(4) A tax equivalent to four percent on the basic rate paid or charged on all sales of local and long distance telecommunications service to telecommunications subscribers and to others through equipment of telecommunications subscribers for the transmission of messages and conversations and upon the sale, rental or leasing of all equipment or services pertaining or incidental thereto; except that, the payment made by telecommunications subscribers or others, pursuant to section 144.060, and any amounts paid for access to the internet or interactive computer services shall not be considered as amounts paid for telecommunications services;

(5) A tax equivalent to four percent of the basic rate paid or charged for all sales of

Second, as previously argued in the dissent in *Six Flags II*, even were subdivision (8) narrower than subdivision (2)—which it is not—nothing in section 144.020.1 suggests that a sale or rental is taxable under only one of the divisions of that provision. To the contrary, section 144.020.1 sets out eight different situations in which a tax will be imposed and particular transactions necessarily will fall into one or more of those categories. If a transaction falls within any one or more of those divisions, it is taxable.[6] This means that, even were

the sale not taxable under subdivision (8), if it is taxable under subdivision (2), then tax will be imposed. Of course, the state may not collect tax under two or more of the subdivisions, but it may collect it once if any of the bases for collecting tax are present.

services for transmission of messages of telegraph companies;

(6) A tax equivalent to four percent on the amount of sales or charges for all rooms, meals and drinks furnished at any hotel, motel, tavern, inn, restaurant, eating house, drugstore, dining car, tourist cabin, tourist camp or other place in which rooms, meals or drinks are regularly served to the public;

(7) A tax equivalent to four percent of the amount paid or charged for intrastate tickets by every person operating a railroad, sleeping car, dining car, express car, boat, airplane and such buses and trucks as are licensed by the division of motor carrier and railroad safety of the department of economic development of Missouri, engaged in the transportation of persons for hire;

(8) A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the lessor, sublessor, renter or subrenter shall not apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property. The purchase, rental or lease of motor vehicles, trailers, motorcycles, mopeds, motortricycles, boats, and outboard motors shall be taxed and the tax paid as provided in this section and section 144.070. In no event shall the rental or lease of boats and outboard motors be considered a sale, charge, or fee to, for or in places of amusement, entertainment or recreation nor shall any such rental or lease be subject to any tax imposed to, for, or in such places of amusement, entertainment or recreation. Rental and leased boats or outboard motors shall be taxed under the provisions of the sales tax laws as provided under such laws for motor vehicles and trailers. Tangible personal property which is exempt from the sales or use tax under section 144.030 upon a sale thereof is likewise exempt from the sales or use tax upon the lease or rental thereof.