

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| MINACT, Inc., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SC93162 |
| | ) | |
| Director of Revenue, | ) | |
| | ) | |
| Appellant. | ) | |

Petition for Review of a Decision of the Administrative Hearing Commission
Honorable Sreenivasa Rao Dandamudi, Commissioner

### Opinion issued April 15, 2014

The director of revenue appeals a decision of the Administrative Hearing Commission holding that income from a "rabbi trust" used to fund a deferred compensation plan for company executives does not constitute "business income" subject to apportionment and taxation in Missouri pursuant to section 32.200, RSMo Supp. 2013.[1] "Business income" under section 32.200 "includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." The Commission's decision is reversed because the trust income is "business income" used for the current operational purpose of attracting and retaining key employees and is, therefore, subject to apportionment in Missouri.

---

[1] All statutory citations are to RSMo Supp. 2013.

## I. Facts

MINACT, Inc., is a Mississippi corporation with operations in several states, including Missouri. In 1988, MINACT established an executive deferred compensation plan (Plan) for a group of managerial and executive employees. The Plan gives participating employees the option to defer portions of their salaries and bonuses. MINACT provides a discretionary matching contribution of up to 3% of an employee's yearly compensation. Approximately thirty employees have participated in the plan since its inception. There are currently seven Plan participants, one of whom lives in Missouri.

The Plan is a non-qualified federal deferred compensation arrangement authorized by 26 U.S.C. section 409A. The fact that the Plan is "non-qualified" means that, unlike a "qualified" plan, all income from Plan investments is part of MINACT's taxable income and the company does not receive a current deduction for its contributions to the Plan.

In 1994, MINACT established a "rabbi trust" to fund the Plan and meet the company's future liabilities to Plan participants.[2] A rabbi trust is a trust established by an employer to fund a non-qualified deferred compensation plan. To qualify as a rabbi trust, the employer must be the grantor of the trust and must report the trust's earnings as income on the employer's federal income tax return. The trustee must be an independent third party that is granted corporate powers under state law. The trust assets are subject to the claims of the employer's general creditors. Trust assets and income can only be used to pay benefits owed to employees under the deferred compensation plan.

---

[2] The term "rabbi trust" comes from an IRS ruling, which approved the use of a trust to provide non-qualified deferred compensation benefits for rabbis.

Employees have no vested right to obtain benefits from the trust until they are entitled to receive benefits under the terms of the underlying non-qualified deferred compensation plan.

MINACT timely filed its 2007 Missouri corporate income tax return and reported $667,773 in "non-business" income, $455,395 of which was income from the rabbi trust. The distinction between "non-business" and "business" income is important because a taxpayer, like MINACT, with tax liabilities in multiple states, must apportion "business income" to the various states in which the taxpayer conducts business while "non-business income" is paid to the state in which the taxpayer resides. MINACT reported and allocated all trust income to Mississippi and paid Mississippi income taxes on that income. The Missouri director of revenue disallowed MINACT's claim of non-business income. Minact timely filed its notice of written protest.

Minact conceded that it should have allocated $212,378 as business income subject to apportionment for Missouri taxation. However, Minact maintained that all of the trust income - $455,395 – was non-business income not subject to apportionment and Missouri taxation. The director determined that the trust income was business income subject to apportionment and taxation in Missouri.

MINACT appealed to the Administrative Hearing Commission. The AHC determined that the trust income was non-business income because it was "not attributable to the acquisition, management, and disposition of property constituting an integral part of MINACT's regular business," as required by section 32.200. The director seeks review.

## II. Standard of Review

Review of the commission's decision is governed by section 621.189. This section authorizes judicial review of the commission's decision. Section 621.193 provides that the commission's decision will be affirmed "if the decision is authorized by law and supported by competent and substantial evidence upon the record as a whole unless clearly contrary to the reasonable expectations of the General Assembly." *Street v. Dir. of Revenue*, 361 S.W.3d 355, 357 (Mo. banc 2012) (internal quotations and citations omitted). The commission's interpretation of state revenue laws is reviewed de novo. *Custom Hardware Engineering & Consulting Inc. v. Dir. of Revenue*, 358 S.W.3d 54, 56 (Mo. banc 2012). The commission's findings of fact will be upheld if the findings are supported by substantial evidence on the whole record. *Id.*

## III. Analysis

Under the multi-state tax compact[3], business income is apportioned to Missouri using a formula that calculates a percentage of a company's income attributable to Missouri based on the company's property, personnel, and sales in Missouri. *ABB C-E Nuclear Power Inc. v. Director of Revenue*, 215 S.W.3d 85, 87 (Mo. banc 2007), citing section 32.200, article IV, section 9. Section 32.200 defines "business" and "non-business" income as follows:

> Business income means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

---

[3] Sections 32.200 through 32.240.

4

> Nonbusiness income means all other income other than business income.

Missouri utilizes two tests to determine whether income is business or non-business. The "transactional test" determines whether the gain is attributable to a type of business transaction in which the taxpayer regularly engages. The "functional test" determines whether the gain is attributable to an activity--namely the acquisition, management, and disposition of property--that constitutes an integral part of the taxpayer's regular business. *ABB C-E Nuclear Power,* 215 S.W.3d at 87.

The trust income does not satisfy the transactional test. MINACT's business is the management of Job Corps Centers pursuant to its contract with the federal government, not investing in and administering the trust.

The trust income does, however, satisfy the functional test for business income. MINACT admitted that it established the Plan and funds the rabbi trust in order to attract and retain key employees. Courts have recognized the obvious proposition that attracting and retaining key employees is an important business purpose. *See, e.g.*, *Hoechst Celanese Corp. v. Franchise Tax Board,* 106 Cal. Rtr. 548 (Cal. 2001); *Estate of True v. C.I.R.*, 2001 WL 761280 (U.S. Tax Ct. 2001). A successful business requires capable, productive management and executive leadership management just as it requires the tools of its trade. By providing additional retirement compensation for its executives, MINACT provides an incentive to attract and retain top executives for the purpose of sustaining its current business operations. Consequently, the trust income is "business income" under the functional test because it is a gain that is attributable to the acquisition,

management, and disposition of property that constitutes an integral part of the taxpayer's regular business. The AHC erred in concluding otherwise.

MINACT raises two main arguments in opposition to this conclusion. First, MINACT asserts that the due process and commerce clauses of the United States Constitution prohibit Missouri from taxing the trust's income because the trust is located in Mississippi. In order for Missouri to tax MINACT's trust income, the trust income must serve an "operational function" as opposed to an "investment function." *Allied Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 788 (1992), citing *ASARCO, Inc. v. Idaho State Tax Commission*, 458 U.S. 307, 326 (1982).

In *Allied Signal* and *ASARCO*, the companies invested in securities to obtain profit. Profit is, of course, the underlying purpose of any for-profit business. If, however, one state can tax all business profits derived in another state, constitutional limits on interstate business taxation are rendered largely illusory. Thus, the court held in both cases that a state could not tax these out-of-state profits as in-state income because the fact that an intangible asset serves a long-term business purpose "does not convert an otherwise passive investment into an integral operational one." *Allied-Signal,* 504 U.S. at 788.

MINACT contends that the trust income in this case is, like the income in *ASARCO* and *Allied Signal*, passive investment income that may have a long-term business purpose but which serves no present, integral operational purpose. MINACT correctly recites the import of both cases, but neither case is dispositive of the particular circumstances of this case. As established above, MINACT created the trust to attract

6

and retain key employees in order to sustain its current business operations. Consequently, neither *ASARCO* nor *Allied Signal* bars Missouri from apportioning and taxing the trust income in this case.

Second, MINACT contends that the trust income cannot satisfy the functional test for business income because it has no authority to control or manage the trust because the trust is administered by a third-party trustee. MINACT cites *Siegel-Robert, Inc. v. Commissioner of Revenue*, Docket No. 00-3763-III (Tenn. Chancery Ct. 2006), *Siegel-Robert, Inc. v. Johnson,* 2009 WL 3486625 (Tenn. App. 2009); and *Sperry & Hutchinson Co., v. Dept. of Revenue*, 527 P.2d 729 (Ore. 1974). None of these cases are binding and, in any event, each is materially distinguishable from this case.

In both *Siegel-Robert* cases, the Tennessee court held that a corporation's interest earned on United States Treasury security investments was non-business income because the interest income was not earned in the regular course of business. Similarly, in *Sperry,* the court held that interest income from a long-term passive investment was not business income because neither the capital nor the interest income was derived from the taxpayer's regular business. It is true that this case is similar to the *Siegel-Robert* cases and *Sperry* insofar as the trust income in this case is not derived from MINACT's business of managing Job Corps centers. Unlike these cases, however, the underlying purpose of the trust income in this case is to attract and retain the employees who do in fact perform MINACT's regular business. MINACT did not establish the Plan and the trust for an altruistic purpose or to achieve a non-business, *ultra vires* purpose. To the

7

contrary, MINACT created the Plan and the trust specifically to facilitate the current operational purpose of retaining and attracting key employees.

The trust income in this case is "business income" used for the current operational purpose of attracting and retaining key employees and is, therefore, subject to apportionment in Missouri.  The AHC decision is reversed, and the case is remanded.


_____
Richard B. Teitelman, Judge

All concur.

8