LAW LIBRARY

**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

IN THE MATTER OF THE TAX APPEAL OF
REEL HOOKER SPORTFISHING, INC., Plaintiff-Appellant v.
STATE OF HAWAIʻI, DEPARTMENT OF TAXATION, Defendant-Appellee,
and EXACT GAME FISHING, INC., Plaintiff-Appellant v.
STATE OF HAWAIʻI, DEPARTMENT OF TAXATION, Defendant-Appellee,
and FINEST KIND, INC., Plaintiff-Appellant v.
STATE OF HAWAIʻI, DEPARTMENT OF TAXATION, Defendant-Appellee

NO. 29598

APPEAL FROM THE TAX APPEAL COURT
(CASE NOS. 07-0072, 07-0073 and 07-0074)

MAY 28, 2010

FOLEY, PRESIDING JUDGE, FUJISE AND LEONARD, JJ.

2010 MAY 28 AM 9:27 FILED K. NAKAMADO CLERK APPELLATE COURTS STATE OF HAWAIʻI

OPINION OF THE COURT BY LEONARD, J.

This is a tax appeal case in which the taxpayers, who are in the charter boat fishing business, challenge the assessment of Hawaiʻi General Excise Tax (**GET**) on their businesses on the ground that a federal statute limiting non-federal taxes upon vessels operating in U.S. navigable waters, 33 United States Code (**U.S.C.**) § 5(b) (2006), preempts the application of the Hawaiʻi GET statute, Hawaii Revised Statutes (**HRS**) § 237-13(6)(A) (2001 & Supp. 2008), to their charter fishing revenue. Plaintiffs-Appellants Reel Hooker Sportfishing, Inc., Exact Game Fishing, Inc., and Finest Kind, Inc. (**collectively Taxpayers**) appeal from the Consolidated Judgment entered on December 22, 2008 (**Judgment**), by the Hawaiʻi Tax

Appeal Court (**Tax Appeal Court**),[1/] which entered Judgment against Taxpayers and in favor of Defendants-Appellees Director of Taxation, State of Hawaiʻi, and Department of Taxation, State of Hawaiʻi (**State**).[2/] We hold that 33 U.S.C. § 5(b) does not preempt the assessment of Hawaiʻi GET on the charter fishing revenue of these Hawaiʻi businesses because GET is a tax assessed on gross business receipts for the privilege of doing business in Hawaiʻi, and is not a tax on their vessels or passengers.

I.    BACKGROUND

        Taxpayers are Hawaiʻi corporations, incorporated under and in accordance with the laws of the State of Hawaiʻi. Taxpayers own and operate three passenger vessels that are licensed by the federal government to carry up to six passengers in the "coastwise" trade. The coastwise endorsement entitles the vessels to unrestricted access to the navigable waters surrounding the islands of Maui, Lanai and Molokai. Taxpayers are in the charter fishing business, providing customers with the opportunity to fish for various species of pelagic game fish, including marlin, tuna, ono (wahoo), and mahimahi. The fishing excursions originate at Maui's Lahaina Harbor.

        The principal source of Taxpayers' earnings is the fares paid by their charter passengers. Since beginning operations decades ago, Taxpayers have added GET to the charter fares collected from their passengers, which is consistent with the practice in the charter fishing industry.

---

        [1/]    The Honorable Gary W.B. Chang presided.

        [2/]    Taxpayers also seek relief from the following orders, also entered on December 22, 2008:  (1) Order Granting Director of Taxation, State of Hawaiʻi and Department of Taxation, State of Hawaiʻi's Motion for Summary Judgment Filed October 10, 2008; (2) Order Denying Reel Hooker Sportfishing, Inc.'s Motion for Summary Judgment on First Amended Complaint to Recover Monies Paid Under Protest Pursuant to HRS § 40-35 Filed August 26, 2008; (3) Order Denying Exact Game Fishing, Inc.'s Motion for Summary Judgment on First Amended Complaint to Recover Monies Paid Under Protest Pursuant to HRS § 40-35 Filed August 21, 2008; and (4) Order Denying Finest Kind, Inc.'s Motion for Summary Judgment on First Amended Complaint to Recover Monies Paid Under Protest Pursuant to HRS § 40-35 Filed August 26, 2008.

On or about June 22, 2007, Taxpayers each filed a complaint against the State in the Tax Appeal Court, seeking relief from GET assessments for tax years 2004 and 2005. In their complaints, Taxpayers requested refunds for amounts paid under protest pursuant to HRS § 40-35 (1993), claiming that the State improperly imposed GET under HRS § 237-13(6)(A)[3/] because it is preempted by 33 U.S.C. § 5(b).[4/]

On October 22, 2007, the Tax Appeal Court entered a stipulation and order consolidating Taxpayers' three cases under Tax Appeal Case No. 07-0072. Taxpayers subsequently filed a first amended complaint on December 24, 2007. In response, the State filed a consolidated answer on January 3, 2008.

The Tax Appeal Court heard the parties' cross-motions for summary judgment on November 3, 2008. On December 22, 2008,

---

[3/]     HRS § 237-13(6)(A) (2001) provides:

Upon every person engaging or continuing within the State in any service business or calling including professional services not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax equal to four percent of the gross income of the business, and in the case of a wholesaler under section 237-4(a)(10), the tax shall be equal to one-half of one percent of the gross income of the business. Notwithstanding the foregoing, a wholesaler under section 237-4(a)(10) shall be subject to section 237-13.3.

[4/]     33 U.S.C. § 5(b) provides:

No taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States, or under the right to freedom of navigation on those waters, except for (1) fees charged under section 2236 of this title; (2) reasonable fees charged on a fair and equitable basis that (A) are used solely to pay the cost of a service to the vessel or water craft; (B) enhance the safety and efficiency of interstate and foreign commerce; and (C) do not impose more than a small burden on interstate or foreign commerce; or (3) property taxes on vessels or watercraft, other than vessels or watercraft that are primarily engaged in foreign commerce if those taxes are permissible under the United States Constitution.

the Tax Appeal Court entered orders granting summary judgment to the State and denying the Taxpayers' motions. Final judgment also was entered. On January 21, 2009, Taxpayers timely filed a notice of appeal.

II. POINTS OF ERROR

On appeal, Taxpayers contend that the Tax Appeal Court erred because it: (1) looked beyond 33 U.S.C. § 5(b)'s plain, unambiguous and explicit prohibition of state taxation of the earnings on Taxpayers' vessels; (2) construed 33 U.S.C. § 5(b) to allow assessment of GET on the charter revenue of Taxpayers' vessels notwithstanding a resulting direct conflict with the federal law; and (3) construed 33 U.S.C. § 5(b) to allow a privilege tax on Taxpayers' business of transporting passengers to and from a state boat harbor.

III. APPLICABLE STANDARD OF REVIEW

"We review the circuit court's grant or denial of summary judgment *de novo*." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)). Likewise, the meaning of a statute is a question of law that is reviewed *de novo*. See, e.g., Sierra Club v. Dep't of Transp. of State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009).

IV. DISCUSSION

The dispositive issue in this tax appeal is whether HRS § 237-13(6)(A) is preempted by the Marine Transportation Security Act of 2002, codified at 33 U.S.C. § 5(b). A state law is preempted by federal law when there is (1) express preemption or (2) implied preemption.

Express preemption exists when Congress makes its intent known through explicit statutory language preempting state action in a given area. See, e.g., English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990); Wardair Canada, Inc. v. Florida Dep't of

Revenue, 477 U.S. 1, 6 (1986). When the text of an express preemption clause is susceptible to multiple interpretations, courts generally accept the reading that disfavors preemption. Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005).

Implied preemption occurs when there is either (1) conflict preemption or (2) field preemption. A state law is preempted under the conflict preemption doctrine when it is impossible to comply with both the state and federal laws, or when the state law impedes the objectives of the federal law. Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992). Field preemption occurs when the federal legislative scheme is so pervasive that it occupies the field, leaving no room for states to supplement federal law. Id. at 98, 115.

The United States Supreme Court has held that the burden of establishing preemption rests with the party who is seeking the benefit of it. De Buono v. NYSA-ILA Med. and Clinical Serv. Fund, 520 U.S. 806, 814 (1997). That party must therefore "bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." Id. Thus, preemption is disfavored unless the "nature of the regulated subject matter permits no other conclusion" or "Congress has unmistakably so ordained." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963).

In analyzing whether a state law is preempted, the "purpose of Congress is the ultimate touchstone." Retail Clerks Intern. Ass'n., local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 103 (1963). The purpose of Congress can be "explicitly stated in the statute's language, or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977).

A.    Hawai'i GET

Pursuant to HRS § 237-13(6)(A), GET is levied, assessed, and collected upon "every person engaging or continuing

within the State in any service business or calling including professional services not otherwise specifically taxed," which indisputably includes Taxpayers' gross income from their charter fishing business. GET is a tax on gross income or gross receipts. See HRS § 237-3 (2001). The Hawai'i Supreme Court has described GET as a tax on the privilege of doing business in the State.

> Hawai'i's general excise tax is a gross receipts tax on the privilege of doing business in Hawai'i, thus Hawai'i's general excise tax is a privilege tax. . . . A privilege tax is assessed a party based on the fact that the party chose to engage in business activity within the state. Such a tax is justified on the ground that companies conducting business enjoy the protections and benefits given by the state.

In re Tax Appeal of Baker & Taylor, Inc. v. Kawafuchi, 103 Hawai'i 359, 365, 82 P.3d 804, 810 (2004) (citations and footnote omitted; format altered).

   B.   Express Preemption

Taxpayers argue that 33 U.S.C. § 5(b) expressly preempts the imposition of GET on the earnings of their vessels, emphasizing the statutory language as follows: "No taxes . . . shall be levied upon or collected from any vessel . . . or from its passengers . . . by any non-federal interest," if the vessel is operating on any navigable waters of the United States.

The Supreme Court has emphasized that the plain language of federal laws must be narrowly construed because of the presumption against preemption. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 505 (1992). In this case, the plain language of 33 U.S.C. § 5(b) prevents anyone except the federal government from imposing a tax on a vessel or on its passengers or crew, while that vessel is operating on navigable waters. In contrast, HRS § 237-13(6)(A) requires Hawai'i businesses to pay a privilege tax for engaging and conducting business in the State of Hawai'i. Contrary to Taxpayers' assertion, the express language of 33 U.S.C. § 5(b) does not explicitly prohibit a state from taxing a

corporation's gross income for engaging in business in that state. The federal statute refers only to *vessels* and their *passengers and crews*, and simply does not address the business revenue or gross income generated by a business that operates the vessel.

Indeed, the case cited by Taxpayers as "illustrative" of their express preemption argument in fact undercuts it. In Aloha Airlines, Inc. v. Director of Taxation of Hawai'i, 464 U.S. 7 (1983), the Supreme Court found that the explicit language of 49 U.S.C. § 1513(a) preempted taxes levied and assessed upon the gross income of an airline pursuant to HRS § 239-6 (1970).[5] As noted in Aloha Airlines, 49 U.S.C. § 1513(a) expressly states that "no state . . . shall levy a tax . . . on persons traveling in air commerce or on the sale of air transportation or *on the gross receipts derived therefrom.*" 464 U.S. at 11 (emphasis added). The Court found that HRS § 239-6 was expressly preempted because it imposes a state tax on the gross receipts of airlines selling air transportation and carrying persons traveling in air commerce. Id. The statute at issue in Aloha Airlines plainly differs from the statute at issue in this case because the explicit language of 33 U.S.C. § 5(b) does not prohibit a state from imposing a tax on the gross income of businesses within that state. Since Congress has not explicitly and unambiguously prohibited states from imposing taxes on the gross income of businesses in 33 U.S.C. § 5(b), there is no express preemption through its statutory language. As argued by the State, if

---

[5] During the relevant period, HRS § 239-6 provided, in part:

> **Airlines, certain carriers.** There shall be levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business; provided that if an airline adopts a rate schedule for students in grade twelve or below traveling in school groups providing such students at reasonable hours a rate less than one-half of the regular adult fare, the tax shall be three per cent of its gross income each year from the airline business.

Congress had intended in 33 U.S.C. § 5(b) to preempt states from imposing taxes on the gross income or gross receipts derived from commerce over navigable waters, it could have so stated, as was done in 49 U.S.C. § 1513(a).

Inherent in Taxpayers' express preemption argument is the contention that any tax on the gross receipts received by Taxpayers for carrying passengers aboard their vessels is in fact a tax on the vessel and passenger alike. This proposition is simply not supported by the authorities relied on by the Taxpayers nor any others that have been considered by this court. See, e.g., Gloucester Ferry Co. v. Penn., 114 U.S. 196 (1885) (cited by Taxpayers) (rejecting, as an interference with interstate commerce, Pennsylvania's attempt to tax dividends of a New Jersey ferry company that merely loaded and unloaded passengers and freight at a Philadelphia dock). Particularly in light of strong presumption against preemption, we decline to broadly construe the term "vessel" to include the gross income generated by a taxpayer's use of its vessel.

Thus, we reject Taxpayers' argument that 33 U.S.C. § 5(b) expressly preempts the assessment of GET.

C.    Implied Preemption

1.    Conflict Preemption

Taxpayers contend that HRS § 237-13(6)(A) is impliedly preempted because it is in direct conflict with 33 U.S.C. § 5(b). Specifically, Taxpayers argue that "state law is violated if Taxpayers do not pay the [GET] tax, yet if they do so, they violate federal law by collecting it on behalf of the state."

First, this is a faulty premise. For better or worse, HRS § 237-16(A)(6) requires only that businesses pay GET to the State, it does not require that businesses collect this tax from their customers. While collection of the GET from customers and clients is a common, arguably uniform, practice that is not prohibited by Hawai'i law, the GET is a privilege tax on the

business, not its customer. The fact that Taxpayers fund their payment of the GET through a pass-through charge to their customers/passengers does not change the nature of the GET from a tax on their businesses to a tax on their passengers.

Taxpayers also argue that the imposition of GET on their charter fishing business impedes the objectives of the federal law and, therefore, is barred by the conflict preemption doctrine. Taxpayers contend that the purpose of 33 U.S.C. § 5(b) was to decrease the financial burden on vessel operators and their passengers by exempting them from state and local taxes that interfere with interstate commerce by mandating a broad prohibition against state and local taxation. The legislative history suggests a more targeted concern and more narrow legislative solution. The U.S. House Conference Report states that the purpose of 33 U.S.C. § 5(b) was "to clarify existing law with respect to Constitutionally permitted fees and taxes on a vessel," and "to prohibit fees and taxes on a vessel <u>simply because that vessel sails through a given jurisdiction</u>." H.R. Rep. No. 108-334, at 180 (2002) (Conf. Rep.) (emphasis added). The Report also notes that the amendment did "not affect whether sales or income taxes are applicable with respect to vessels." <u>Id.</u> Indeed, a sponsor of the bill that was codified as 33 U.S.C. § 5(b) explained the purpose of the legislation as follows:

> [The proposed legislation] addresses the current problem, and the potential for greater future problems, of local jurisdictions seeking to impose taxes and fees on vessels merely transiting or making innocent passage through navigable waters subject to the authority of the United States that are adjacent to the taxing community. We are seeing instances in which local communities are seeking to impose taxes or fees on vessels even where the vessel is not calling on, or landing, in the local community. These are cases where no passengers are disembarking, in the case of passenger vessels, or no cargo is being unloaded in the case of cargo vessels and where the vessels are not stopping for the purpose of receiving any other service offered by the port. In most instances, these types of taxes would not be allowed under the Commerce Clause of the United States Constitution. Unfortunately, without a statutory clarification, the only means to determine whether the

> burden is an impermissible burden under the Constitution is
> to pursue years of litigation.

148 Cong. Rec. E2143-04 (2002).

Taxpayers and *Amicus Curiae* Paradise Cruise, Limited, dba Star of Honolulu Cruises & Events (**Amicus Curiae**) also ask this court to consider an unpublished Tennessee decision concluding that 33 U.S.C. § 5(b) preempted a Tennessee privilege tax law. Upon review, however, the statute at issue in High County Adventures, Inc. v. Polk County, No. E2007-02678-COA-R3-CV, 2008 WL 4853105 (Tenn. Ct. App., November 10, 2008), levied a privilege tax upon consumers participating in commercial whitewater rafting excursions, not upon the rafting businesses, although the businesses were tasked with collecting the tax from their customers/passengers. The Tennessee court, noting the lack of any explicit preemption language in 33 U.S.C. § 5(b), held that there was a manifest and irreconcilable conflict between Polk County's privilege tax on consumers participating in rafting excursions on navigable waters and the federal law. Id. at *12-13.[6/] As Taxpayers, in their role as Hawai'i businesses, and not their boating customers/passengers, are taxed pursuant to HRS § 237-14(6)(A), the Tennessee court's rationale is inapplicable to this case.

2. Field Preemption

Taxpayers argue that taxation of the earnings from their vessels pursuant to HRS § 237-13(6)(A) creates an obstacle to uniform federal regulation of maritime commerce and Amicus Curiae argues that federal law so fully occupies the legislative

---

[6/] We are also unpersuaded by the August 30, 2005 order issued by a trial court in Pennsylvania, *i.e.*, the Court of Common Pleas of Fayette County, Pennsylvania (No. 220 of 2005, G.D.), that was provided by Amicus Curiae. In contrast to our analysis here, the Pennsylvania court summarily construed its statute as levying a tax on the use of the river. As discussed above, Hawai'i courts have long held GET to be a privilege tax on businesses, for the privilege of doing business in Hawai'i, without regard to the nature of the business. Thus, we reject the notion that Taxpayers are being taxed simply for their use of Hawai'i's navigable waters.

field that the GET is impliedly preempted.  While we recognize the broad scope of federal maritime legislation, we fail to see how the imposition of GET on the gross receipts of Taxpayers' charter fishing businesses interferes in any way with the uniform federal regulation of maritime commerce.  Accordingly, we reject the argument that the doctrine of field preemption is applicable to this case.

V.    CONCLUSION

For the foregoing reasons, the Circuit Court's December 22, 2008 Judgment is affirmed.

DATED:  Honolulu, Hawai'i, May 28, 2010.

Presiding Judge

Associate Judge

Associate Judge

Dennis Niles
(Shannon S. Imlay and
Ronald N.W. Kim with
him on the briefs)
(Paul Johnson Park & Niles)
for Plaintiffs-Appellants

Damien A. Elefante, Deputy
Attorney General (Hugh R. Jones,
Deputy Attorney General, with
him on the brief
for Appellee STATE OF HAWAI'I,
  DEPARTMENT OF TAXATION