**LOREN COOK CO., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. SC 93061.**

Supreme Court of Missouri, En Banc.

Nov. 12, 2013.

Mark A. Olthoff, Scott Lindstrom, John R. Dodson, Polsinelli PC, Kansas City, for the Company.

James R. Layton, Solicitor General, Attorney General's Office, Jefferson City, for the Director.

MARY R. RUSSELL, Chief Justice.

Loren Cook Co. ("Cook") seeks review of the decision of the Administrative Hearing Commission ("AHC") determining that the sale of an aircraft and subsequent purchase of another from different entities did not meet the requirements of the "taken in trade" exemption under section 144.025, RSMo Supp.2012. This Court finds that because the use of an intermediary did not transform the separate sale and purchase transactions into one trade-in transaction, Cook could not claim a trade-in exemption. The AHC's decision is affirmed.

## I. Facts

Cook purchased a Cessna 525B aircraft from Cessna Aircraft Company in 2005 for $7,240,125. The purchase agreement listed Cook as the purchaser and Cessna as the seller and contained a trade-in provision that the parties struck through. Cook made payments to Cessna. Two years later, Cook sold a Cessna 525A aircraft to C.B. Aviation for $4,725,000 million. The sales agreement listed Cook as seller and C.B. Aviation as purchaser.

To capture a tax benefit under section 1031 of the United States Internal Revenue Code, Cook used Time Value Property Exchange Sales, LLC ("TVPX"), an FAA-registered aircraft dealer, as an intermediary. Cook assigned its rights and obligations under both its purchase agreement and its sales agreement to TVPX. Cook and TVPX also entered an "Exchange and Trade-in Contract" under which TVPX was obligated to transfer title of the 525B aircraft to Cook and transfer title of the 525A aircraft to C.B. Aviation.

Cook issued a bill of sale to TVPX for the 525A aircraft, which TVPX then sold to C.B. Aviation on the same day. Additionally, on that same day, Cessna issued an invoice to TVPX for the 525B aircraft, and TVPX in turn issued an invoice to Cook. TVPX held title to each aircraft for only minutes before transferring the title to the respective parties pursuant to its contractual obligations.

Cook reported $2,515,125—the difference between the purchase price of the 525B aircraft and the sale price of the 525A aircraft—on its tax return for the period it was subject to use tax in Missouri. It claimed that it was entitled to a $4,725,000 million credit under section 144.025.1, which allows a tax exemption for an amount "taken in trade as a credit or part payment on the purchase price." Based on the trade-in credit, Cook paid $140,847 in use tax on the 525B aircraft. The director of revenue subsequently determined that Cook was not entitled to the trade-in credit and assed use tax in the amount of $264,600 plus statutory interest in the amount of $45,054.47. Cook appeals.

## II. Jurisdiction and Standard of Review

■ This Court has exclusive jurisdiction to review cases involving the construction of the revenue laws of this state. Mo. Const. art. V, sec. 3. The AHC's interpretation of revenue laws is reviewed de novo. *DST Sys., Inc. v. Dir. of Revenue*, 43 S.W.3d 799, 800 (Mo. banc 2001). The AHC's decision will be upheld if it is authorized by law, supported by competent and substantial evidence on the whole record, does not violate mandatory procedural safeguards, and it is not clearly contrary to the reasonable expectations of the General Assembly. Section 621.193, RSMo 2000; *see Custom Hardware Eng'g & Consulting, Inc. v. Dir. of Revenue*, 358 S.W.3d 54, 56 (Mo. banc 2012).

## III. Analysis

■ The issue to be decided here is whether the sale of an aircraft and subsequent purchase of another from different entities can be considered a "trade-in" for purposes of the "taken in trade" tax exemption when an intermediary is used to facilitate the transaction.

Under section 144.610.1, RSMo 2000, a use tax "is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property . . . in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020." Section 144.020, in turn, allows a trade-in exemption of the amount taxed under section 144.025. *See* section 144.020.1, RSMo Supp.2012. In relevant part, section 144.025 provides:

> [I]n any retail sale . . . where any article on which sales or use tax has been paid, credited, or otherwise satisfied . . . is taken in trade as a credit or part payment on the purchase price of the article being sold, the tax imposed by sections

144.020 and 144.440 shall be computed only on that portion of the purchase price which exceeds the actual allowance made for the article traded in or exchanged, if there is a bill of sale or other record showing the actual allowance made for the article traded in or exchanged.

■ In effect, this statute exempts from the use tax the amount for which already-owned property is traded-in as a credit toward the purchase price of newly acquired property. *Great Southern Bank v. Dir. of Revenue*, 269 S.W.3d 22, 24 (Mo. banc 2008). Exemptions are strictly construed against the taxpayer, and any doubts are resolved in favor of applying the tax. *Brinker Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 436 (Mo. banc 2010). Taxpayers have the burden of showing they are entitled to an exemption. *Mo. State USBC Ass'n v. Dir. of Revenue*, 250 S.W.3d 362, 364 (Mo. banc 2008).

■ Cook argues that it was entitled to the "taken in trade" exemption in section 144.025.1 even though it bought and sold the 525A and 525B aircraft through different entities because it used TVPX as an intermediary. Because the phrase "taken in trade" is not defined in the statute, courts apply the ordinary meaning of the term. *Cook Tractor Co., Inc. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006).

This Court had an opportunity to examine the meaning of "taken in trade" in *Great Southern v. Dir. of Revenue*. There, it was found that a trade "requires that the parties each have title to or ownership of their respective items and then exchange them." *Great Southern*, 269 S.W.3d at 25. Under very similar circumstances to the instant case, this Court found that Great Southern engaged in "two separate transactions" when it

bought an aircraft from one seller, sold an aircraft to a different buyer and used Wachovia Bank as an intermediary. *Id.* Because Wachovia could not keep either aircraft, but rather simply performed the duties proscribed by its agreement with Great Southern, this Court found, "Wachovia never took the [aircraft] in trade for anything" and Great Southern could not claim the section 144.025.1 trade-in exemption. *Id.*

Cook argues its situation differs from *Great Southern* in that TVPX is an FAA-registered dealer and actually took title to the aircraft before making the required transfers. It further argues that during the time TVPX had title to the aircraft, it bore the risk of loss and could have breached its contracts by selling them to other entities. Cook contends the steps it took were part of one mutual, interdependent transaction in which it exchanged title of the 525A aircraft with TVPX for title of the 525B aircraft.

However, "[w]hen determining the merits of revenue cases, it is important to look beyond legal fictions . . . to discover the economic realities of the case." *Great Southern*, 269 S.W.3d at 25. Here, the reality is that Cook engaged in two separate transactions. It contracted to buy the 525B aircraft from Cessna and explicitly crossed out all trade-in provisions from that agreement. Cook then began to make payments directly to Cessna. Two years later, it contracted to sell its 525A aircraft to C.B. Aviation. TVPX only became subject to these contracts through Cook's assignment of its contract rights and obligations when Cook used TVPX as an intermediary to receive a federal tax benefit. While TVPX did hold title to the two aircraft for a few minutes on the day both transfers took place, it did not have full control of them because it was limited by its contractual obligations with Cook,

Cessna and C.B. Aviation. The reality of the transactions is that TVPX did not take the 525A aircraft in exchange for the 525B aircraft. Rather, it was merely acting as an agent to facilitate the different transactions that Cook had previously initiated. *See Great Southern*, 269 S.W.3d at 25 (finding an intermediary "effectively was acting as [the taxpayer's] agent . . . to take advantage of the tax deferral provisions of [s]ection 1031.").

The plain language of section 144.025.1 further supports the conclusion that Cook engaged in two separate transactions instead of one mutual exchange. The statute includes a provision stating the trade-in exemption "shall also apply to motor vehicles, trailers, boats, and outboard motors *sold by the owner* . . . if the seller purchases or contracts to purchase a subsequent motor vehicle, trailer, boat, or outboard motor within one hundred eighty days." Section 144.025.1 (emphasis added). This provision, known as the separate sale reduction provision, essentially allows a taxpayer to claim the trade-in exemption on certain types of property even when the taxpayer sells already-owned property separately from the purchase of new property.

██ Aircraft, however, are not listed as one of the types of property entitled to the exemption. This Court must examine the language of the statutes as they are written. *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 192 (Mo. banc 2006). It cannot simply insert terms that the legislature has omitted. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 668 (Mo. banc 2010). If the legislature intended to include the sale of aircraft by an owner in the separate sale reduction provision, it could have done so. The fact that it did not indicates that when a taxpayer sells an already-owned aircraft separately from the purchase of a new aircraft,

the taxpayer is not entitled to the trade-in exemption, regardless of the use of an intermediary.

Finally, it is undisputed that the transactions presented in this case qualified as a tax-free exchange of property under section 1031 of the Internal Revenue Code. Cook argues that Missouri should treat these transactions consistently—as one mutually dependent exchange. The Internal Revenue Code, however, does not govern the application of Missouri's use tax. *See Great Southern,* 269 S.W.3d at 25. Additionally, while the regulations to section 1031 specifically allow for the use of a qualified intermediary, there is no such analog in either section 144.025.1 or the regulations thereto. *Compare* Treas. Reg. § 1.1031(k)–1(g)(4) ("In the case of a taxpayer's transfer of relinquished property involving a qualified intermediary, . . . the taxpayer's transfer of relinquished property and subsequent receipt of like-kind replacement property is treated as an exchange"), *with* 12 CSR 10–103.350 (regulations governing the application of the trade-in exemption).

To receive a tax exemption under section 144.025, the taxpayer must demonstrate that its relinquished property was "taken in trade" for the acquired property. While the use of a qualified intermediary will make a transaction exempt under federal law, the plain language of section 144.025.1 does not so allow.

## IV. Conclusion

For the foregoing reasons, the decision of the AHC is affirmed.

All concur.