

# SUPREME COURT OF MISSOURI
# en banc

COMMERCIAL BARGE LINE COMPANY,　　　)
and AMERICAN COMMERCIAL BARGE　　　)
LINE, LLC, N/K/A AMERICAN COMMERCIAL　)
LINES, LLC,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Appellants,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　No. SC93448
　　　　　　　　　　　　　　　　　　　　)
DIRECTOR OF REVENUE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　　　　)


PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE HEARING
COMMISSION
The Honorable Karen A. Winn, Commissioner

*Opinion issued April 29, 2014*

Commercial Barge Line (CBL) and American Commercial Barge Line (ACBL)

(collectively referred to as Taxpayers) seek review of the Administrative Hearing

Commission's (AHC) determination that they owed Missouri sales and use tax on goods

and supplies delivered to ACBL's towboats while the towboats traveled south on the

Mississippi River.  Taxpayers contend the assessments violated the Commerce Clause

because they are not fairly related to any services Missouri provides Taxpayers.  They

also claim that the taxes violate the Maritime Transportation Security Act, 33 U.S.C.

§ 5(b) (2006), which prohibits non-federal entities from assessing taxes on vessels in navigable waters of the United States. They further argue that the three-year statute of limitations in sections 144.220 and 144.720[1] bars the Department of Revenue (DOR) from assessing any additional tax liability for the audit period, October 1, 2001, through December 31, 2006.

This Court finds that the sales and use taxes were imposed on supplies purchased or used while in Missouri and did not violate the Commerce Clause as they were fairly related to the services the Taxpayers received from the state.[2] Further, the taxes did not violate the Maritime Transportation Security Act because they were assessed on ACBL's purchases and deliveries of supplies, not on the towboats themselves. Last, because Taxpayers did not file any sales or use tax returns during the audit period, DOR was not barred from assessing tax liability for the audit period as section 144.220 provides no statute of limitations when the taxpayer does not file a return. The AHC's decision is affirmed.

## Factual Background

CBL is a Delaware corporation and the single member of two limited liability companies: ACBL and Louisiana Dock Company.[3] ACBL operates line-haul towboats that transport cargo along the Mississippi River from Minneapolis to New Orleans.

---

[1] All references are to RSMo 2000.

[2] This Court has exclusive jurisdiction as this case involves the validity of a state statute and the construction of state revenue laws. Mo. Const. art. V, sec. 3.

[3] Prior to 2005, Danielson Holding Company was the parent corporation of ACBL and Louisiana Dock. After it reorganized in bankruptcy in January 2005, CBL became their parent company. CBL is also connected to several other entities that are not relevant to this case and, therefore, are not discussed.

Louisiana Dock, in turn, provides various goods and services to ACBL, including selling and delivering supplies to ACBL's towboats and storing supplies purchased from third-party vendors until they are ready to be delivered.

Neither CBL nor ACBL is registered to do business in Missouri and neither has offices or employees located in Missouri. Louisiana Dock is registered to do business in Missouri and has both property and employees in St. Louis. ACBL and Louisiana Dock are considered disregarded entities of CBL for both federal and Missouri tax purposes because they are limited liability companies and CBL is the only member of each company.[4] However, Louisiana Dock registered in Missouri to pay sales and use tax under its own name, as opposed to using CBL's name, to avoid confusion with vendors. Taxpayers did not file any sales or use tax returns in Missouri during the audit period.

DOR audited CBL, ACBL, Louisiana Dock and other affiliated companies in 2007. At issue is Taxpayers' tax liability in two types of transactions: (1) sales tax for ACBL's purchase of food and other supplies from Louisiana Dock and (2) use tax for ACBL's purchases from third-party vendors who either delivered the supplies directly to the ACBL towboats or used Louisiana Dock to deliver the supplies. For each type of transaction, ACBL used the supplies exclusively on the towboats because the boats did not dock while in Missouri.

---

[4] A disregarded entity is a term used in the federal treasury regulations. It means that, for federal tax purposes, ACBL's and Louisiana Dock's federal taxable income is included in and reported by CBL. *See* I.R.C. § 7701; Treas. Reg. § 301.7701-3. Further, Missouri statutes provide that, for sales and use tax purposes, "a limited liability company and its members shall be classified and treated on a basis consistent with the limited liability company's classification for federal income tax purposes." Section 347.187.2.

In the first category of transactions, Louisiana Dock purchased supplies from vendors to resell to ACBL.  Louisiana Dock did not pay sales tax on these supplies because it claimed the resale exemption.  When it resold the supplies to ACBL, ACBL also did not pay sales tax on the supplies.  Instead, ACBL claimed the "in-commerce" exemption, using a certificate that said, "Delivers [sic] were not made in the State of Missouri and the purchases were not used in the State of Missouri."

For the second category of transactions, ACBL purchased supplies from third-party vendors located in Kentucky and Illinois.  In some instances, the third-party vendors shipped the supplies to Louisiana Dock, which stored them in its facility in St. Louis.  Louisiana Dock then delivered the supplies to ACBL's towboats while they were on the Mississippi River.  ACBL paid Louisiana Dock a flat hourly rate for all of the services it provided, including making deliveries.  In other instances, the Illinois vendor delivered the supplies directly to ACBL's towboats on the Mississippi River.  The vendor charged Illinois sales tax on all supplies it delivered to northbound boats, but not on deliveries to southbound boats.  ACBL did not pay any Missouri taxes on the supplies purchased from the third-party vendors.  Instead, it provided "exemption certificates," which stated, "Title does not pass to ACBL until the supplies have been delivered to the towboat which is always outside the State of Missouri."

DOR's audit determined that the certificates ACBL issued to Louisiana Dock and the third-party vendors were issued in bad faith and assessed sales and use taxes pursuant to sections 144.020 and 144.610.  For the supplies ACBL purchased from Louisiana Dock, DOR found the Taxpayers liable for $12,893.57 in sales tax and related interest

and penalties. For the supplies purchased from third-party vendors, DOR found the Taxpayers liable for $107,775.09 in use tax and related interest and penalties.

Taxpayers sought review of these assessments before the AHC. The AHC concluded that the sales and use tax assessments did not violate the Commerce Clause because the supplies were either purchased or used within Missouri and the benefits Missouri provided to Taxpayers were fairly related to the taxes assessed. It further concluded that because the sales and use taxes were assessed on tangible personal property either purchased or used in Missouri, and not on the privilege of using the river or on the towboats, they did not violate the Maritime Transportation Security Act. Lastly, it determined that DOR's claims were not barred by the statute of limitations because Taxpayers failed to file sales and use tax returns during the audit period.

The AHC determined the proper assessment was $53,610.33 in use tax on the third-party vendor transactions and $4,904.82 in sales tax on transactions with Louisiana Dock. These amounts reflected the tax owed on approximately half of all of ACBL's transactions to represent the times ACBL's towboats traveled southbound on the Mississippi River in Missouri.[5] It then upheld DOR's assessment of interest and a five percent addition as a penalty. Sections 144.170; 144.250; 144.665; 144.720. Taxpayers appeal.

---

[5] Neither party presented evidence regarding what proportion of the relevant transactions took place on the Missouri side of the Mississippi River. In the absence of such evidence, the AHC approximated that the towboats spend 50 percent of their time traveling southbound and, therefore, in Missouri. *See Kansas City Power & Light Co. v. Dir. of Revenue*, 83 S.W.3d 548, 553 (Mo. banc 2002) ("where evidence is not sufficient to allow for a precise calculation of the amount of tax, then the [AHC] shall make as close an approximation as it can." (internal quotation omitted)). Neither party contests this approximation.

**Jurisdiction and Standard of Review**

This Court has exclusive jurisdiction in all cases involving the validity of a state statute and the construction of state revenue laws. Mo. Const. art. V, sec. 3. The AHC's decision will be affirmed if: (1) it is authorized by law; (2) it is supported by competent and substantial evidence on the whole record; (3) it does not violate mandatory procedural safeguards; and (4) it is not clearly contrary to the reasonable expectations of the General Assembly. Section 621.193; *see Loren Cook Co. v. Dir. of Revenue*, 414 S.W.3d 451, 453 (Mo. banc 2013). This Court reviews the AHC's interpretation of the law *de novo*. *Loren Cook Co.*, 414 S.W.3d at 453.

**Tax Assessments Did Not Violate the Commerce Clause**

Taxpayers first argue that they cannot be subjected to sales or use tax under the Commerce Clause, which gives Congress the power to "regulate Commerce . . . among the several States." U.S. Const. art I, § 8, cl. 3. While the Commerce Clause prevents states from discriminating against interstate commerce, "it was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). For a tax to survive a challenge under the Commerce Clause, it must satisfy the four criteria outlined in *Complete Auto*: the tax (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state. *Id.*

Here, Taxpayers do not contest that the sales and use taxes assessed against them meet the first three prongs of the *Complete Auto* test. Rather, they suggest that the taxes

6

were not fairly related to the services Missouri provided because their boats did not receive any direct services from the state. A tax will satisfy this prong so long as the "incidence of the tax as well as its measure . . . [are] tied to the earnings which the State . . . has made possible." *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 626 (1981). The relevant inquiry is not whether the taxpayers have received any "direct benefits" from the state, but "whether the state has given anything for which it can ask return." *Id.* at 622, 625. To this point, a taxpayer can be expected to contribute to a state for benefits "derived from his enjoyment of the privileges of living in an organized society." *Id.* at 623. Such privileges include "police and fire protection, the use of public roads and mass transit, and the other advantages of civilized society." *Goldberg v. Sweet*, 488 U.S. 252, 267 (1989).

Taxpayers contend that they did not receive any services from the state of Missouri because their boats operate exclusively on the waters of the Mississippi River and their only connection with the state of Missouri is through Louisiana Dock. This argument, however, is anchored in neither law nor fact.

The state boundary extends to the middle of the Mississippi River, and Missouri enjoys concurrent jurisdiction over the western half of the Mississippi River with the federal government. *See* section 7.001; *Streckfus Steamers, Inc. v. City of St. Louis*, 472 S.W.2d 660, 664 (Mo. App. 1971). While Taxpayers' boats are on the western half of the river, they are within the state of Missouri. The supplies delivered to the towboats while they are on the western portion of the river are delivered in Missouri, whether they were delivered by Louisiana Dock or a third-party vendor. As such, Taxpayers received the

7

benefit of Missouri roads and docks that facilitated the deliveries of the taxed supplies and from Missouri's law enforcement and judicial systems while in this state. They also enjoyed these benefits when they stored supplies in Louisiana Dock's Missouri facility. Importantly, the Taxpayers received these benefits by virtue of *their* presence in this state, not simply because Louisiana Dock is located in Missouri.

To support their argument, Taxpayers rely on *American River Transportation Co. v. Bower*, 813 N.E.2d 1090 (Ill. App. Ct. 2004). *ARTCO*, similar to the instant case, involved the question of whether a state can assess use tax on supplies consumed on barges that plied the eastern portion of the Mississippi River in Illinois. The *ARTCO* court found that because the supplies being taxed were purchased and loaded onto tugboats in Missouri, the Illinois use tax failed the fairly related test. Here, however, the state in which the deliveries occurred seeks to assess tax liability. The supplies were delivered while Taxpayers' towboats were in Missouri, and the AHC upheld sales and use tax assessments on the supplies delivered in Missouri. *ARTCO* does not support the position that Missouri cannot assess sales or use tax on the delivery of goods within its own borders.

Although Taxpayers argue that they do not receive any direct benefits from Missouri, they reap the "advantages of a civilized society." Further, the AHC decision upheld sales and use tax assessments on deliveries that occurred in Missouri, so the taxes were tied to the earnings this "state made possible." The sales and use taxes assessed against Taxpayers were fairly related to the services Missouri provides and did not violate the Commerce Clause.

8

**Tax Assessments Did Not Violate the Maritime Transportation Security Act**

The Taxpayers next argue that the Maritime Transportation Security Act, codified at 33 U.S.C. § 5(b), prohibits Missouri from imposing any sales or use taxes on the supplies delivered to the towboats. That federal statute provides that "[n]o taxes . . . shall be levied upon or collected from any vessel or other water craft . . . by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States."

While the taxpayers argue that no taxes means no taxes, this argument fails to consider what the state is actually taxing. Missouri is not taxing the barges, towboats, or their crews. Rather, it is assessing sales and use tax on the goods and supplies delivered to the Taxpayers' towboats while they are in Missouri.

In this way, the instant case is similar to *Reel Hooker Sportfishing, Inc. v. State Dep't of Taxation*, 236 P.3d 1230 (Haw. Ct. App. 2010), in which the state assessed a general excise tax against a charter fishing company that navigated the waters surrounding various Hawaiian islands. Although the taxpayers argued that this violated the Maritime Transportation Security Act, the court found that the general excise tax was assessed on the "privilege of doing business in Hawaii" and *not* on the boats themselves.

In Missouri, section 144.020 states that a sales tax is levied "for the privilege of engaging in the business of selling tangible personal property . . . in this state." Likewise, section 144.610 imposes a use tax "for the privilege of storing, using or consuming within this state any article of tangible personal property." Just as the tax in *Reel Hooker Sportfishing* was assessed for the privilege of doing business in Hawaii, Missouri sales

9

and use taxes are assessed for the privilege of carrying on various activities within this state. Here, the sales and use taxes were assessed against Taxpayers for buying or using supplies within Missouri, not against their vessels. As such, the sales and use taxes assessed against Taxpayers do not violate 33 U.S.C. § 5(b).

### Taxes Were Not Assessed Outside of the Statute of Limitations

The taxpayers finally argue that the statute of limitations barred DOR from assessing these taxes. Section 144.220 provides two limitation periods for assessing additional tax liability. Under the first provision, if a taxpayer neglects or refuses to file a sales tax return or files a fraudulent return, there is no time limit as to when DOR can assess tax liability.[6] Section 144.220.1. In all other cases, DOR has three years after the return was filed or required to be filed to assess additional sales tax liability. Section 144.220.3. Section 144.720 sets the same limitation period with respect to use tax assessments.

The Taxpayers point out that Louisiana Dock filed timely sales and use tax returns for the audit period. They argue that since Louisiana Dock and ACBL are disregarded entities for Missouri tax purposes under section 347.187.2, Louisiana Dock's tax returns satisfied CBL's obligation to file tax returns for ACBL. Their argument continues that DOR only had three years to assess additional tax liability, and any liability assessed after that three years is barred by the relevant statute of limitations.

---

[6] The failure to file a return, in certain situations, can constitute a neglect to file "where the taxpayer did not otherwise disclose its operations to the [DOR] and could not rely on previous decisions and policy of the [DOR] as an excuse for nondisclosure." *Hewitt Well Drilling & Pump Serv., Inc. v. Dir. of Revenue*, 847 S.W.2d 795, 798 (Mo. banc 1993).

10

While it is true that Louisiana Dock filed tax returns for the audit period, those returns did not accurately reflect the transactions of CBL, its parent company, or ACBL, its affiliate, because both Louisiana Dock and ACBL provided inaccurate exemption certificates to vendors. Further, neither CBL nor ACBL filed sales or use tax returns in Missouri, and their tax liability does not stem from Louisiana Dock's activities within Missouri, but rather from ACBL's purchase and use of supplies while in Missouri. Because the Taxpayers did not file any tax returns or disclose their activities to DOR in any other manner, the first statute of limitation provision of section 144.220 – that there is no time limitation with respect to when DOR can assess tax liability – attaches. *See Hewitt Well Drilling & Pump Serv., Inc. v. Dir. of Revenue*, 847 S.W.2d 795, 798 (Mo. banc 1993). DOR was not barred from assessing taxes against Taxpayers.

### Conclusion

For the foregoing reasons, the AHC's decision is affirmed.

_____
Mary R. Russell, Chief Justice

All concur.

11