SIX FLAGS THEME PARKS,
INC., Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

No. SC 84563.

Supreme Court of Missouri,
En Banc.

Jan. 14, 2003.

Rehearing Denied April 1, 2003.

machines, diving exhibitions and stage acts.

Six Flags filed a claim for a refund of certain Missouri sales taxes paid during the tax period July 1995 through November 1998, specifically: (1) a refund of Missouri sales tax paid on the Eureka facility's sales of admission tickets and season passes to customers who placed the order from, and received the tickets or passes outside of Missouri, pursuant to the statutory "in commerce" exception set forth in section 144.030.1; and (2) a refund of Missouri sales tax paid on receipts from video game machines, pursuant to the double taxation avoidance provision of section 144.020.1(8).[1] The Director issued a final decision denying Six Flags' claims for refunds. The Commission also denied both claims, and Six Flags appeals.

## Standard of review

■ This Court reviews the Commission's interpretation of revenue law de novo. *Southwestern Bell Telephone Co. v. Director of Revenue*, 78 S.W.3d 763, 765 (Mo. banc 2002). The Commission's "factual determinations are upheld if they are supported by the law and, after reviewing the whole record, there is substantial evidence to support them." *Id.*

## Tickets and season passes

■ In the tax period at issue, customers who were admitted to Six Flags' Eureka facility used either single-day admission tickets or season passes. The Eureka facility sold some of the tickets and season passes to customers physically present at the amusement park, but it also sold them by mail or telephone. The Eureka facility accepted payment by credit card or by check or money order mailed to the Eureka facility. It then sent the purchased

Edward F. Downey, Jefferson City, Juan D. Keller, John P. Barrie, B. Derek Rose, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ronald Molteni, Asst. Atty. Gen., Roger L. Freudenberg, Jefferson City, for Respondent.

RICHARD B. TEITELMAN, Judge.

Six Flags Theme Parks, Inc. (Six Flags) seeks review of the decision of the Administrative Hearing Commission (Commission) denying its claim for refunds of sales taxes paid to the Director of Revenue (Director) on certain admission ticket and season pass sales and video game machine receipts.

This Court has jurisdiction. *Mo. Const. art. V, section 3.* The admission ticket and season pass sales at issue are subject to Missouri sales tax, and they are not exempt as sales in commerce between the states. Receipts from the video game machines at issue are not subject to Missouri sales tax because sales or use tax was paid on the purchase of the machines and the machines are subsequently rented to customers. The Commission's decision is affirmed in part, reversed in part and the case is remanded.

## Background

Six Flags is a Delaware corporation doing business in Missouri. Six Flags operates an amusement park in Eureka, Missouri. The Eureka facility is a place of amusement offering attractions such as roller coasters, carnival games, video game

---

1. All statutory references are to RSMo 2000.

tickets or season passes to the purchaser's address. This appeal concerns only sales of tickets and season passes sent to a non-Missouri mailing address.

From July 1995 through November 1998, Six Flags collected and remitted Missouri sales tax on all tickets and season passes sold on behalf of the Eureka facility. Six Flags now seeks a refund of the sales taxes paid on the tickets purchased by mail or telephone and sent to a non-Missouri mailing address, arguing that an exemption applies.

Section 144.020.1(2) imposes a sales tax on the "amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events. . . ." However, section 144.030.1 provides a sales tax exemption for "such retail sales as may be made in commerce between this state and any other state of the United States. . . ."

Six Flags argues that the ticket sales and season passes at issue are exempt under section 144.030.1 as sales "in commerce between" the states. The Director argues that the object of the tax is not ticket sales, but amounts paid to a place of amusement, and that the sales are thus taxable as occurring locally within Missouri.

■ Exemptions from taxation are to be strictly construed, and it is the burden of the taxpayer claiming the exemption to show that it fits the statutory language exactly. *Westwood Country Club v. Director of Revenue*, 6 S.W.3d 885, 887 (Mo. banc 1999).

The true object of the transactions in this case is the service of amusement, not the sale of tangible personal property. There is no evidence that the tickets themselves have any value independent of the customer's permission to enter the amusement park. These transactions do not depend on the transfer of title or ownership in any tangible property; instead, they are the sale of permission to enter a place of amusement and become the recipient of a service.

Given that the thing of value purchased by the customer is not the ticket, but the entry into the amusement park, the transaction does not take place in commerce between the states. This Court has held that the collection of a portion of an admission fee while a chartered tour boat is on the Kansas side of the Missouri river does not render the transaction in interstate commerce when the obligation to pay for the tour arose in Missouri, the payments are kept in Missouri, and the boat is moored in Missouri. *Lynn v. Director of Revenue*, 689 S.W.2d 45, 48 (Mo. banc 1985). The transaction in this case is between the customer and an amusement park in Missouri for admission to the amusement park in Missouri. This is essentially a local transaction, despite its incidental or nonessential interstate elements, such as collection of a portion of the fee while in another state, processing the credit card payment outside Missouri, shipping the ticket to a non-Missouri mailing address, receiving the telephone ticket order from outside Missouri or providing the service to a customer who crossed a state border to get to Missouri.

The object of the transaction and the taxable event is the admission to a place of amusement in Missouri, which is taxable pursuant to section 144.020.1(2). The "in commerce" exemption of section 144.030.1 does not apply. Thus, Six Flags is not entitled to a refund of sales tax paid on its sales of tickets and season passes.

The Commission's decision denying the refund of sales taxes paid on sales of tickets and season passes is affirmed.

### Video game machines

■ Six Flags' Eureka facility contained video game machines. Video game machines are cash-operated amusement devices that allow customers to test their skill by playing against a machine—similar to pinball games or in-home gaming systems such as Sega or Nintendo. They are tangible personal property. A customer plays one of the games by inserting the required amount of cash into the machine. A customer purchases an exclusive right to use the machine until the rules of the game determine that the game has ended.

Six Flags did not own the video game machines. The owner of the machines paid Missouri sales or use tax on its purchases of the machines. Six Flags had a contract with the owner that permitted the owner to place the machines at the Eureka facility. Six Flags and the owner split the receipts from the machines evenly. Six Flags collected and remitted all sales tax on the receipts.

Six Flags seeks a refund of sales tax paid on the video game machine receipts during the tax period July 1995 through November 1998, arguing that the sale of the machines had previously been taxed and the machines cannot be taxed twice.

Section 144.020.1(8) imposes:

A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" as defined in subdivision (8) of section 144.010 or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the lessor, sublessor, renter or subrenter shall not apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property....

Six Flags argues that sales or use taxes were previously paid on the video game machines, that customers at the Eureka facility lease or rent the machines and that section 144.020.1(8) bars taxation of the video game machine receipts. The Director argues that Six Flags is not entitled to avoid taxation pursuant to section 144.020.1(8) because Six Flags was not the owner of the video game machines and did not pay the sales or use tax when the machines were purchased. Further, the Director argues that the customer's use of the video game machine is not a lease, but a fleeting entitlement to indulge in an amusement.

■ Rather than describing an exemption, section 144.020.1(8) imposes a tax liability. While it is the taxpayer's burden to establish the right to an exemption, it is the Director's burden to show a tax liability. *Utilicorp United, Inc. v. Director of Revenue*, 75 S.W.3d 725, 731 (Mo. banc 2001). Section 136.300.1 states in part: "With respect to any issue relevant to ascertaining the tax liability of a taxpayer all laws of the state imposing a tax shall be strictly construed against the taxing authority in favor of the taxpayer...." *Id.*

The taxation of receipts from the video game machines is prohibited by this Court's holding in the similar circumstance of the rental to customers of golf carts. *Westwood*, 6 S.W.3d at 888–889. In *Westwood*, this Court determined that a country club owed no sales tax on fees it charged for golf cart usage because the golf carts were being rented to customers and the country club previously paid sales tax on its purchases and leases of the carts. *Id.* at 888. Section 144.020.1(8)

governs such a transaction.[2]  *Id.* at 889.

Here, as with a golf cart, a Six Flags customer purchases the exclusive right to operate the video game machine for a term governed by the rules of the game.  This is a rental agreement.

As in *Westwood*, the Director seeks to tax the rental of personal property previously taxed when purchased.  *Id.* at 889.  Since the owner of the video game machines paid a sales or use tax on the machines when it purchased them, the goal of taxing the property only once is met by not taxing the subsequent rental to customers.  *Id.*

█ It is irrelevant that Six Flags does not own the machines.  When Six Flags entered into its arrangement with the owner of the machines, both the owner and Six Flags became renters of the machines to customers and avoid taxation of the machines' receipts pursuant to section 144.020.1(8).  The purpose of Missouri's sales tax system is to tax property once and not at various stages in the stream of commerce, regardless of who is receiving the benefit of the property.  *Id.* at 888.

The Commission's decision denying the refund of sales taxes paid on video game machine receipts is reversed.

## Conclusion

The Commission's decision denying the refund of sales taxes paid on video game machine receipts is reversed; in all other respects the decision is affirmed.  The case is remanded.

2.  In *Bally's LeMan's Family Fun Centers, Inc. v. Director of Revenue*, 745 S.W.2d 683 (Mo. banc 1988), this Court held that video arcades are places of amusement for the purposes of section 144.020.1(2).  Section 144.020.1(8) was not at issue.  *Id. Westwood* clarified that when section 144.020.1(8) is at issue, that

LIMBAUGH, C.J., WHITE, BENTON and PRICE, JJ., concur.

WOLFF, J., concurs in part and dissents in part in separate opinion filed.

STITH, J., concurs in opinion of WOLFF, J.

MICHAEL A. WOLFF, Judge, concurring in part and dissenting in part.

I concur in the principal opinion's holding that Six Flags' tickets are subject to taxation.  But I respectfully dissent, for the following reasons, from the conclusion that sales tax cannot be imposed on coin-operated video games in an arcade at Six Flags' amusement parks:

1.  This case is indistinguishable from *Bally's LeMan's Family Fun Centers, Inc. v. Director of Revenue*, 745 S.W.2d 683 (Mo. banc 1988), where this Court held that the sales tax in section 144.020.1(2) [1] applies to coin-operated games at places of amusement.

2.  When a person puts coins in a video game, it is not a "rental" or a "lease."

3.  Assuming that the coin-operated video game transaction is a "rental," there are specific exceptions in the same subsection to the sales tax for short-term rentals;  for example, for boats and motors at places of amusement, entertainment or recreation.  But there is no exception in the statute for the short-term "rentals" of video games.  Where the legislature has not created an exception, this Court should not invent one.

more specific statute will be applied over the more general section 144.020.1(2).  *Westwood*, 6 S.W.3d at 889.

1.  All references are to RSMo 2000, unless indicated otherwise.

4. Section 144.020.1(8), upon which Six Flags relies, says that if the lessor or renter had "purchased" the property and paid the tax, then the sales tax need not be collected from subsequent lessees or renters. However, Six Flags did not purchase the machines and did not pay the tax, so Six Flags by the plain terms of the statute is not entitled to a refund.

## *Bally's* Holding Governs This Case

The parties have stipulated that Six Flags is a place of amusement. As such, proceeds from coin-operated video games are subject to sales tax under *Bally's Le-Man's Family Fun Centers, Inc. v. Director of Revenue.*

The facts in *Bally's* are indistinguishable from the facts here. The taxpayer in *Bally's* operated video arcades at various shopping centers and malls. Section 144.020.1(2) imposes the tax on "fees paid to, or in any place of amusement, entertainment or recreation...." [2]

This Court held that money paid into coin-operated games is subject to sales tax

2. Section 144.020 provides as follows: A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows: (1) Upon every retail sale in this state of tangible personal property, a tax equivalent to four percent of the purchase price paid or charged, or in case such sale involves the exchange of property, a tax equivalent to four percent of the consideration paid or charged, including the fair market value of the property exchanged at the time and place of the exchange, except as otherwise provided in section 144.025; (2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events; (3) A tax equivalent to four percent of the basic rate paid or charged on all sales of electricity or electrical current, water and gas, natural or artificial, to domestic, commercial or industrial consumers; (4) A tax equivalent to four percent on the basic rate paid or charged on all sales of local and long distance telecommunications service to telecommunications subscribers and to others through equipment of telecommunications subscribers for the transmission of messages and conversations and upon the sale, rental or leasing of all equipment or services pertaining or incidental thereto; except that, the payment made by telecommunications subscribers or others, pursuant to section 144.060, and any amounts paid for access to the Internet or interactive computer services shall not be considered as amounts paid for telecommunications services; (5) A tax equivalent to four percent of the basic rate paid or charged for all sales of services for transmission of messages of telegraph companies; (6) A tax equivalent to four percent on the amount of sales or charges for all rooms, meals and drinks furnished at any hotel, motel, tavern, inn, restaurant, eating house, drugstore, dining car, tourist cabin, tourist camp or other place in which rooms, meals or drinks are regularly served to the public; (7) A tax equivalent to four percent of the amount paid or charged for intrastate tickets by every person operating a railroad, sleeping car, dining car, express car, boat, airplane and such buses and trucks as are licensed by the division of motor carrier and railroad safety of the department of economic development of Missouri, engaged in the transportation of persons for hire; (8) A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" as defined in subdivision (8) of section 144.010 or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the lessor, sublessor, renter or subrenter shall not apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property. The purchase or use of motor vehicles, trailers, boats, and outboard motors shall be taxed and the tax paid as provided in sections 144.070 and 144.440. No tax shall be collected on the rental or lease of motor vehicles, trailers, boats, and outboard motors, except as provided in sections 144.070 and 144.440. In no event shall the rental or lease of boats and outboard motors be considered a

because the "statute expresses a legislative intent to tax all fees paid in places of amusement." 748 S.W.2d at 685.

Six Flags is a place of amusement. The coin-operated video receipts are fees paid in a place of amusement. The statute says they are taxed. How can this Court say otherwise?

**A Customer Does Not "Rent" or "Lease" A Video Game by Inserting a Coin**

Six Flags relies upon a strained interpretation of section 144.020.1(8), which provides that sales tax does not apply to the rental or lease of tangible personal property if the lessor has paid the sales tax at the time of its purchase.[3] The portion that Six Flags relies upon imposes:

A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" as defined

in subdivision (8) of section 144.010 or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the lessor, sublessor, renter or subrenter shall not apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property. Section 144.020.1(8).

Six Flags claims that a patron playing a video game "leases" the video game. As a result, Six Flags argues, the sales receipts generated from patrons playing the video games are subject to section 144.020's exclusion.

The relationship Six Flags has with patrons who play the video games resembles more of a licensor-licensee relationship than that of a lessor-lessee. A "lease," for instance, is statutorily defined as "[a] transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including the sale on approval or a sale or return, or retention

---

sale, charge, or fee to, for or in places of amusement, entertainment or recreation nor shall any such rental or lease be subject to any tax imposed to, for, or in such places of amusement, entertainment or recreation. Rental and leased boats or outboard motors shall be taxed under the provisions of the sales tax laws as provided under such laws for motor vehicles and trailers. Tangible personal property which is exempt from the sales or use tax under section 144.030 upon a sale thereof is likewise exempt from the sales or use tax upon the lease or rental thereof.

**3.** Section 144.020.1(8) provides as follows: A tax equivalent to four percent of the amount paid or charged for rental or lease of tangible personal property, provided that if the lessor or renter of any tangible personal property had previously purchased the property under the conditions of "sale at retail" as defined in subdivision (8) of section 144.010 or leased or rented the property and the tax was paid at the time of purchase, lease or rental, the lessor, sublessor, renter or subrenter shall not

apply or collect the tax on the subsequent lease, sublease, rental or subrental receipts from that property. The purchase or use of motor vehicles, trailers, boats, and outboard motors shall be taxed and the tax paid as provided in sections 144.070 and 144.440. No tax shall be collected on the rental or lease of motor vehicles, trailers, boats, and outboard motors, except as provided in sections 144.070 and 144.440. In no event shall the rental or lease of boats and outboard motors be considered a sale, charge, or fee to, for or in places of amusement, entertainment or recreation nor shall any such rental or lease be subject to any tax imposed to, for, or in such places of amusement, entertainment or recreation. Rental and leased boats or outboard motors shall be taxed under the provisions of the sales tax laws as provided under such laws for motor vehicles and trailers. Tangible personal property which is exempt from the sales or use tax under section 144.030 upon a sale thereof is likewise exempt from the sales or use tax upon the lease or rental thereof.

or creation of a security interest is not a lease." Section 400.2A–103(1)(j). To characterize a patron who plays a video game at an arcade as a lessee of the video game stretches the common understanding of "lease" beyond all recognition.

What the coin depositor obtains at the video arcade is the right to play a game. It is simply a license.[4] The relationship is analogous to that of a sports team and a fan who purchases a ticket to a game. The fan receives a license to enter the premises and occupy a seat in order to view the game, subject to rules and conditions the fan agrees to abide by when purchasing the ticket. The fan does not possess the seat in the traditional sense of the word. The fan is paying for amusement in the form of a sporting event and is not entitled to any other benefit other than the exclusive right vis-à-vis other fans to view the game from the assigned seat. The seat cannot be removed. Thus, control of the seat is still in the possession of the sports team even though the seat is temporarily occupied.

In this case, the Six Flags patron receives a license to occupy the video game by paying the requisite fee, subject to rules and conditions the patron agrees to abide by when entering the arcade and paying the fee to play the game. The patron is paying for an amusement and is not entitled to any benefit other than the exclusive right to play the video game vis-à-vis fellow patrons of the arcade. The patron as a licensee enjoys a very limited amount of control vis-à-vis Six Flags—just enough to allow the patron to play the game in the location Six Flags has chosen and subject to Six Flags' rules—because Six Flags still controls and possesses the

video game. The patron gets a very limited right to use the property. This relationship is not a "lease" or "rental".

## Sales Tax Statutes Provide Exceptions for Some Short-term Uses or Rentals, But Not for Video Games

Assuming, for the sake of argument, that the use of the video game is a lease or rental, the statute—which has exceptions for certain short-term rentals—does not have an exception that covers video games. In section 144.020.1(8), the very subdivision Six Flags cites, there is an exception for rentals of boats and outboard motors in places of amusement, entertainment and recreation.

To read these exceptions in context, it is clear that these short-term uses or "rentals" of video games are not included in the concepts covered by the portion of section 144.020.1(8) that Six Flags relies upon. The subsequent lease or rental exception that Six Flags would like to have is one that applies "if the lessor or renter of any tangible personal property had previously purchased the property under conditions of 'sale at retail' . . . or leased or rented the property and *the tax* was paid at the time of purchase, lease or rental, the lessor, sublessor, renter, or subrenter shall not apply or collect *the tax* on the subsequent lease, sublease, rental or subrental receipts from that property." (Emphasis added.) What does that statute mean by *"the tax?"*

What is clearly intended is to tax the transfer of the property only once and to exclude subsequent purchases or leases of the same property from double taxation on its transfer. The statute does not mean to exempt fees for periodic uses of the prop-

---

4. "License" is defined as: "authority or permission of one having no possessory rights in land to do something on that land which would otherwise be unlawful or a trespass— distinguished from lease." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1304 (3rd ed.1993).

erty such as occur in this case. If it did, the statute would say so—just as the same statute does for boats and outboard motors in places of amusement, entertainment or recreation. Exemptions from taxation, where they appear in the law, are construed against the taxpayer. *Spudich v. Director of Revenue*, 745 S.W.2d 677, 682 (Mo. banc 1988).

In the absence of a statutory exception for boat and outboard motor rentals, for instance, the marina operator that purchases an outboard motor to rent to its patrons would have to collect tax on the rentals even though the marina operator paid sales tax on the purchase. The marina, as a place of recreation, is spared from this taxation by a specific exception in section 144.020.1(8).[5] If Six Flags wants an exception, the proper remedy is to go to the General Assembly, not to this Court, for the creation of an exception.

The mischief that is here perpetrated by the principal opinion originates in *Westwood Country Club v. Director of Revenue*, 6 S.W.3d 885 (Mo. banc 1999), which applies the subsequent rental exception to the fees charged by a country club for use of golf carts. As in this case, there is no specific exception in the statute for golf carts. This unfortunately opens up many possibilities for tax avoidance in fee-for-use or rental situations—which also are not excepted by the statute. *Westwood* should be overruled on this point.[6]

The principal opinion in footnote 2 attempts to follow *Westwood* and avoid the holding in *Bally's* by arguing that subdivision 8 of section 144.020, which covers a subsequent lease or rental of property whose sale had been taxed at retail, is "more specific" than subdivision 2, which taxes "fees paid . . . in any place of amusement". In order to get to the point of trying to determine whether one subdivision is more specific than the other, one needs to discern a conflict between two statutes. *Greenbriar Hills Country Club v. Director of Revenue*, 935 S.W.2d 36, 38 (Mo. banc 1996). Even accepting this "more specific-less specific" as a canon of construction,[7] the canon applies only where two separate statutes conflict; here the purported conflict is between two subdivisions of the same statute. These two subdivisions do not conflict. But even if they do conflict, neither subdivision on its face seems more specific than the other. As construed by applicable case law, i.e., *Bally's*, subdivision 2, which includes coin-operated game machines, is a more specific reference than the generic reference in subdivision 8 to leases and rentals. In any event, if Six Flags wants an exception for video games, it should ask the General Assembly for one.

### Six Flags Never Paid Sales Tax on the Video Games Machines and Does not Qualify for A Refund

Six Flags does not own the video game machines. Six Flags has a contractual

---

**5.** For a definition of a "place of recreation" as used in the context of section 144.020 *see Columbia Athletic Club v. Director of Revenue*, 961 S.W.2d 806, 809 (Mo. banc 1998), overruled on other grounds by *Wilson's Total Fitness Ctr., Inc. v. Director of Revenue*, 38 S.W.3d 424 (Mo. banc 2001).

**6.** I have already opined that the other part of *Westwood* also was wrong and should be overruled. *See Greenbriar Hills Country Club v. Director of Revenue*, 47 S.W.3d 346 (Mo. banc 2001) (Wolff, J. dissenting). Because this case is fully controlled by the *Bally's* case, as discussed above, there actually is no need to overrule *Westwood* here, but it might be wise to do so before its impact spreads to other situations as unworthy as this one.

**7.** *But see Greenbriar Hills*, 47 S.W.3d 346, 359–360 (Mo. banc 2001) (Wolff, J., dissenting).

relationship with the owner of the video games, which paid Missouri sales or use tax on its purchases of the machines. Under the agreement with the machines' owner, Six Flags permits the owner to place the machines at its amusement park and supplies the electricity. Six Flags and the owner agree to split the money generated by the video games.

Six Flags claims that without a refund for the sales tax collected from the video games, it will be "double-taxed" for the purchase of the video games themselves and, subsequently, for the proceeds that come from Six Flags' video game patrons. However, since Six Flags does not own the video game machines because Six Flags did not purchase them, Six Flags has not been taxed for the purchase of the video game machines. There is no double taxation.

The arrangement between the machines' owner and Six Flags might illustrate a point about an appropriate use of the exception for subsequent lease or rental: If Six Flags had leased the machines from their owner, the leasing fee would not be subject to the sales tax imposed by section 144.020.1(8) if the owner had already paid the tax in purchasing the machines. That would be the kind of transaction intended by the statute to be free of subsequent taxation in order to avoid double taxation. But taxing the fees for use of the video games by Six Flags' patrons is simply not covered by the exception.

The point, that Six Flags never paid the tax and, thus, is not entitled to claim a refund, may be a technicality. But it points out the windfall the majority creates for those video game owners and operators. It can reasonably be assumed that these coin-operated games have been priced with the tax built in, at least since

the *Bally's* decision in 1988. The owners and operators, having collected the tax from their patrons, can now claim refunds and keep the money.

**Conclusion**

Since 1988, with this Court's decision in *Bally's*, it has been settled law that sales tax applies to coin-operated games at places of amusement. Today's decision opens the door for video arcades throughout the state to apply for windfall refunds of sales taxes rightfully collected as part of the fee for playing their machines.[8] That such a result is thought to follow from my opinion for the Court in *Westwood* is reason enough to overrule *Westwood*. Strictly speaking, however, it is not necessary to overrule *Westwood*, but simply to follow *Bally's*. The main point is that exceptions to this sales tax ought to be enacted by the General Assembly, not by this Court.

---

8. Tax consultants, take note: you, too can share in this windfall of free money.