IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 19 MAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court dated |
| | : | February 20, 2020 at No. 531 FR |
| | : | 2017 granting exceptions and |
| v. | : | entering judgment of the October 16, |
| | : | 2019 Order which reversed the |
| | : | decision of the Board of Finance and |
| COMMONWEALTH OF PENNSYLVANIA, | : | Revenue dated May 10, 2017 at |
| | : | Nos. 1622419 & 1622420. |
| Appellant | : | |
| | : | ARGUED: April 13, 2021 |

**OPINION**

**JUSTICE TODD**                                    **DECIDED: November 17, 2021**

In this appeal, we are asked to determine whether concert tickets which a casino distributed to its patrons for playing table games and slot machines at its facility constitute "services" for purposes of calculating the casino's taxable revenues generated by those games and machines under Section 1103 of the Gaming Act, 4 Pa.C.S. §§ 1101-1194. After careful consideration, we conclude that such concert tickets are not services within the meaning of Section 1103, and so are excludible from these taxable revenues. We therefore affirm the order of the Commonwealth Court.

## I. Background

Appellee Greenwood Gaming & Entertainment Inc. ("Greenwood") operates Parx Casino ("Parx"), located in Bensalem, Pennsylvania. During 2014, as part of its efforts to encourage slot machine and table game play, Greenwood distributed to patrons of Parx

who played its slot machines and table games various "promotions, giveaways and direct player development."  Stipulations of Fact, (R.R. at 25a-389a), 9/12/18, at 3.  The items given away included cash, department store gift cards, and items of personal property, such as iPads, Michael Kors designer handbags, and Nutribullet food processors.  *See In re Greenwood Gaming*, Docket Nos. 1622419, 1622420 (Dept. of Rev. Bd. Fin. filed May 10, 2017) (Exhibit G to Stipulations of Fact) (R.R. at 323a-329a).  Parx also gave away tickets to attend live concerts and entertainment performances by artists such as Jay-Z, Beyonce, Justin Timberlake, and Lady Gaga.  Stipulations of Fact at 7-8.

In 2016, Greenwood filed a petition for refund with the Board of Appeals of the Department of Revenue ("Board of Appeals") for the calendar year 2014, contending that it was entitled under Section 1103 of the Gaming Act to exclude from the taxable revenue attributable to its table games and slot machines the value of all cash and personal property it distributed to the players of those games.

Section 1103 defines the gross revenue derived from table games and slot machines, which is subject to state taxation.  "Gross table game revenue" is defined, in relevant part, as "[c]ash or cash equivalents received in the playing of a table game" minus "[t]he actual cost paid by the certificate holder for any personal property distributed to a player as a result of playing a table game.  *This does not include travel expenses, food, refreshments, lodging or services*."  4 Pa.C.S. § 1103 (emphasis added).  Similarly, "[g]ross terminal revenue" is defined, in relevant part, as "cash or cash equivalent wagers received by a slot machine" minus "[a]ny personal property distributed to a player as a result of playing a slot machine.  *This does not include travel expenses, food, refreshments, lodging or services*."  *Id.* (emphasis added).

Thus, the definition of both gross table game revenue ("GTGR") and gross terminal revenue ("GTR") excludes from a casino's taxable revenue "personal property" it has

distributed to players of table games and slot machines, respectively. *Greenwood Gaming v. Commonwealth, Department of Revenue*, 90 A.3d 699, 714 (Pa. 2014) ("*Greenwood Gaming I*"). However, the value of "travel expenses, food, refreshments, lodging or services" – things colloquially referred to in the gaming vernacular as "comps," *id.* at 707 – are not excludable from GTGR and GTR for taxation purposes.

In its refund petition, Greenwood sought to exclude the portion of the price it paid for the above-described concert and performance tickets, which ranged from $200 to $300 each, attributable to the admission cost of the event for which the ticket was issued. *See* Petition for Refund, 11/21/16, filed in *In re Greenwood Gaming*, Docket Nos. 1622419, 1622420 (Dept. of Rev. Bd. Fin.) (Exhibit C to Stipulations of Fact) (R.R. 116a-293a). Apparently, for some of these tickets, 25% of their total cost was for food, for which Greenwood did not seek reimbursement, given that the cost of food is not a permissible exclusion from a casino's revenue under Section 1103. *Id.* The total amount of the refund which Greenwood sought attributable to the admission price of the tickets was $28,770. Stipulations of Fact at 5-8.

The Board of Appeals denied Greenwood's refund petition, and Greenwood sought review of that decision from the Board of Finance and Revenue ("Board of Finance"). The Board of Finance granted Greenwood's requested relief in part, and denied it in part. Relevant to the instant matter, the Board of Finance ruled that Greenwood was not entitled to an exclusion for the concert tickets, concluding that "the tickets claimed by [Greenwood] are for admission to concerts, and . . . are services for purposes of § 1103." *In re Greenwood Gaming*, *supra*, at 5.

Greenwood filed a petition for review with the Commonwealth Court. That tribunal reversed the Board of Finance in a split, unpublished, *en banc* decision authored by Judge

Ellen Ceisler.[1]  *Greenwood Gaming v. Commonwealth of Pennsylvania*, 531 F.R. 2017 (Pa. Cmwlth. filed Oct. 16, 2019) ("*Greenwood Gaming II*")

Before the Commonwealth Court, the Commonwealth, echoing the reasoning of the Board of Finance, argued that the concert tickets constituted services, since the ticket merely conferred the right of admission to the event performance, and the event performance itself — an entertainment service — is what Greenwood paid for and the patrons received; hence, it argued that the cost of the tickets cannot be excluded from the casino's revenue under Section 1103.  Greenwood countered that the tickets cannot be considered services as the term is used in the Gaming Act, and, to the extent that term is ambiguous, principles of statutory construction supported its interpretation.

In its opinion, the Commonwealth Court observed that the term "service" is not defined by the Gaming Act; thus, it turned to principles of statutory construction to determine its meaning.  The court first noted that, in this Court's previous ruling in *Greenwood Gaming I*, we held that the definition of GTR in Section 1103 created exclusions from taxation, and, thus, to the extent its language is ambiguous, it must be strictly construed in a taxpayer's favor.  The court reasoned that *Greenwood Gaming I*'s holding required all terms used in Section 1103 to be construed in the taxpayer's favor.

The court characterized the concert tickets as intangible personal property, and, thus, neither a good nor a service.  In arriving at this conclusion, the court relied on a concurring and dissenting opinion authored by Judge Renee Cohn Jubelirer in *Yocca v. Pittsburgh Steelers Sports*, 806 A.2d 936 (Pa. Cmwlth. 2002).  That case concerned an action under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") brought by dissatisfied individuals who had purchased stadium seat licenses to

---

[1] Judge Ceisler was joined by Judges Mary Hannah Levitt, Kevin Brobson, Patricia McCullough and Michael Wojcik.  Judge Robert Simpson, joined by Judge Anne Covey, dissented.

Pittsburgh's football stadium that entitled them to buy season tickets for seats in a specified location for each season that the facility was in operation. Their claim was based upon representations made by the Steelers organization in promotional brochures distributed to prospective purchasers. With respect to the UTPCPL claim, the *Yocca* court determined that the seat licenses were option contracts which entitled the purchaser to buy season tickets for the entirety of the contract's duration, and, thus, could conceivably be viewed as a service as that term is defined in the UTPCPL. *Id.* at 947. However, Judge Jubelirer dissented from this portion of the majority opinion, as, in her view, the licenses were "intangible property" which qualified as neither goods nor services under the UTPCPL, and, hence, plaintiffs could not state a claim for relief under that act. *Id.* at 950.[2]

The Commonwealth Court in the instant matter regarded the concert tickets as analogous to the seat licenses in *Yocca*, because, in its view, they merely conveyed intangible rights — the right of attendance at the performance — and therefore did not constitute services as that term is used in other legal contexts, such as under Article Nine of the Uniform Commercial Code. *Greenwood Gaming II*, 531 F.R. 2017, at 5-6. The court rejected the Commonwealth's argument that the concerts themselves were services, because Greenwood was not the service provider; rather, the concert performers provided the entertainment services, and the tickets merely conveyed the right

---

[2] *Yocca* was ultimately reversed by our Court. *Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425 (Pa. 2004). However, the basis for our reversal was our conclusion that the promotional brochures did not constitute a contract between the purchasers and the Steelers; rather, the only binding contract was the later-executed written agreement between the parties. Thus, we ruled that neither a breach of contract action nor an action under the UTPCPL could be brought based on the brochures. As it was unnecessary to our disposition, we did not decide whether the seat licenses constituted either goods or services under the UTPCPL, and only acknowledged that the issue was not "completely settled." *Id.* at 438.

of the patrons to attendance. To the extent that the Gaming Act might be regarded as unclear, the court found that, under the doctrine of strict construction of taxing statutes, Greenwood was entitled to the benefit of its suggested interpretation. Ultimately, the court concluded that the concert tickets did not constitute services under the Gaming Act, and, thus, Greenwood was entitled to have their value excluded from its gross revenue.

Judge Simpson, joined by Judge Covey, dissented. Judge Simpson found that the term "services" as used in the definitions of GTGR and GTR in Section 1103 was ambiguous. While agreeing that, as a result of this ambiguity, Greenwood as the taxpayer was entitled to a strict interpretation in its favor, he, nevertheless, considered the Commonwealth Court's interpretation to create an absurd or unreasonable result which, in his view, justified disallowing the exclusion.

Judge Simpson considered the proper focus of the analysis to be on the underlying events for which the concert tickets were issued – *i.e.*, the entertainment performances themselves – given that the value of the tickets is derived from the right of access to these performances, which the ticket provides. Thus, in Judge Simpson's view, such events meet the common and ordinary definition of a "service," which is "doing something useful for a person . . . for a fee." *Greenwood Gaming II* at 4 (Simpson, J., dissenting) (quoting Black's Law Dictionary 1491 (9th ed. 2009)).

Judge Simpson further noted that, because the legislature made a deliberate policy choice that taxpayers should not foot the bill for "comps" such as food, drink, lodging, and services by expressly disallowing exclusions for such things when they are supplied by a casino operator to its patrons, it was unreasonable to conclude that the legislature would allow their costs to be excluded merely because they are provided indirectly through the issuance of a ticket by the casino to a patron. Consequently, Judge Simpson reasoned that these concert tickets were Greenwood's way of indirectly providing a service to its

patrons, and, hence, were not excludable from its aggregate gross revenue under Section 1103.

The Commonwealth appealed the Commonwealth Court's order to our Court.

## II. Arguments

The Commonwealth first argues that the lower court erred in determining that the term "services" is ambiguous, and then relying on the presumption of strict construction to interpret that term. In its view, the term is unambiguous, and, thus, must be construed in accordance with its plain and ordinary meaning, as can be ascertained by dictionary definitions of that term. The Commonwealth notes that dictionaries have defined "services" as "useful labor that does not produce a tangible commodity," and "an *intangible* commodity in the form of human effort, such as labor, skill or advice." Commonwealth Brief at 19 (quoting, respectively, Merriam-Webster Online Dictionary, https://www.merriam-webster.com, and Black's Law Dictionary (11th ed. 2019) (emphasis original)). The Commonwealth maintains that the tickets themselves are not tangible personal property, as the value of the printed instrument itself is slight, nor are they intangible personal property with inherent value like a stock certificate or copyright; rather, their value, as Judge Simpson's dissent recognized, was in what they represent — the right to view a skilled performance, which is what the Commonwealth characterizes as an "intangible service." *Id.* at 20. The Commonwealth highlights that this is the manner in which such tickets are treated for computation of Pennsylvania's sales and use tax, as they are not included in the list of items of tangible personal property enumerated in that act which are subject to imposition of sales tax. *Id.* (citing 72 P.S. §§ 7201(m), 7202).

The Commonwealth concedes that there is no direct Pennsylvania authority resolving the question of whether a concert ticket is the conveyance of an intangible service, but notes that the highest state courts of Wisconsin, Minnesota, and Missouri

have classified tickets to baseball games and amusement parks in this manner for purposes of the imposition of their states' sales taxes. Commonwealth Brief at 21-23 (citing *Wisconsin Department of Revenue v. Milwaukee Brewers*, 331 N.W.2d 383 (Wis. 1983) (use tax was chargeable on the purchase price of baseball tickets because those tickets represented the sale of a taxable service, as they conferred the right on their holder to attend the game); *Minnesota Twins v. Commissioner of Revenue*, 587 N.W.2d 287 (Minn. 1998) (same), and *Six Flags Theme Parks v. Director of Revenue*, 102 S.W.3d 526 (Mo. 2003) (sales tax properly charged on tickets sold to out of state customers for admission to amusement parks, given that the service being sold was that of amusement, and the ticket represented permission for the holder to enter the park and receive the service)). The Commonwealth highlights that other federal and state courts have taken this same view regarding the transfer of tickets as representing the transfer of a service, rather than a commodity subject to antitrust laws, as well as in determining that jurisdiction over a ticket seller of shore excursions was lacking because the tickets sold were for provision of a service and did not convey personal property as required for jurisdiction to attach.

The Commonwealth contends that construing the giving of concert tickets as being equivalent to providing services for purposes of Section 1103 is consistent with the principles of these cases, as the "actual cost" which Greenwood is seeking to deduct under Section 1103 is not the cost of printing the physical tickets, but the true value of what they represent — the performance of an entertainment service — which is reflected by the high price of the tickets. Commonwealth Brief at 26.

The Commonwealth notes that such an interpretation would be consistent with the "essence of the transaction" or "true object" tests, which have been previously applied by the Commonwealth Court for purposes of determining whether our Commonwealth's

sales and use tax should be imposed on the conveyance of a particular item. *Id.* at 27 (citing *Graham Packaging Co. v. Commonwealth*, 882 A.2d 1076, 1086 (Pa. Cmwlth. 2005) (applying the essence of the transaction test to hold that commercially sold prepackaged standardized computer software was subject to the imposition of sales tax)). The Commonwealth proffers that, if the same approach is taken here, *i.e.*, examining the "substance" or "true object" of the ticket giveaways, then it yields the conclusion that the primary purpose of the giveaways "was not the tickets themselves, but the right to view a pop concert or show." *Id.* at 28.

The Commonwealth additionally asserts that the court below improperly relied on the *dissent* in *Yocca*, a case neither party in this matter had cited, given that it involved a claim under the UTPCPL and not under a taxing statute. The Commonwealth deems *Yocca* to be, in any event, inapposite, inasmuch as the *Yocca* court found that seat licenses were not the equivalent of tickets.

The Commonwealth further maintains that the construction afforded to the term "services" by the Commonwealth Court majority yields unreasonable and absurd results, as it would permit casinos to exclude from revenue the value of items that they may not deduct directly, like food or lodging, merely by, instead, furnishing their patrons a ticket to obtain the same things. The Commonwealth contends that, under this rationale, casinos would be able to indirectly offer, tax-free, a multiplicity of other services to their patrons who play table games and slot machines, like oil changes or plumbing services, simply by issuing them a ticket. Such practical results, in the Commonwealth's view, weigh heavily against the lower court's construction.

The Commonwealth next argues that, even if the term "services" can be regarded as ambiguous, the lower court erred in its analysis by relying solely on the presumption that a taxing statute such as Section 1103 must be strictly construed. The Commonwealth

notes that this presumption is a rule of last resort which controls only where application of the principles of statutory construction enumerated in the Statutory Construction Act, *see* 1 Pa.C.S. § 1921(c), yield no definitive conclusion. In this regard, the Commonwealth argues that this term can be properly interpreted by utilizing two principles of statutory construction: the avoidance of an unreasonable and absurd result, and the deference to which an administrative agency interpreting and enforcing its own statutes is entitled. In that latter regard, the Commonwealth notes that the Department of Revenue, the agency tasked with interpreting and enforcing Section 1103 of the Gaming Act, issued an interpretative bulletin in 2015 which states that "promotional giveaways involving services such as venue services and event tickets" are "not deductible." Commonwealth Brief at 34 (quoting Department of Revenue Gaming Tax Bulletin 2015-01). The Commonwealth proffers that, because this interpretation of the statute by the Department of Revenue was reasonable and not "clearly erroneous," it is entitled to deference. *Id.*

In response, Greenwood characterizes the concert tickets as a form of personal property. It argues that Section 1103 specifically allows personal property to be excluded from the calculation of gross revenue, and enumerates only five classes of things which may not be excluded as personal property: travel expenses, food, refreshments, lodging, and services. Greenwood reasons that, because event tickets or entertainment expenses could have been, but are not, listed, we should, in accordance with the maxim *expressio unius est exclusio alterius* – the express inclusion of certain things implies the exclusion of other things – deem them purposely omitted from the list of prohibited exclusions; and, accordingly, we should find concert tickets are excludable personal property. Greenwood Brief at 17.

Greenwood further asserts that the Commonwealth had not previously taken the position that these tickets constitute services, noting that the Commonwealth stated in its

brief to the Commonwealth Court in this matter that event tickets were "clearly and unambiguously personal property." *Id.* at 19 (quoting Commonwealth Brief in *Greenwood Gaming II*, at 18 (R.R. at 463)). Moreover, Greenwood asserts that, after our decision in *Greenwood Gaming I* – which involved the question of whether its casino was entitled to a tax credit under Section 1103 for its distribution of, *inter alia*, concert tickets to patrons who played slot machines[3] – the case was remanded to the Commonwealth Court to calculate the credit which it was due. Greenwood points out that the Commonwealth did not argue therein that the tickets were services, and, in fact, upon remand, settled the case by providing tax relief for those tickets. Greenwood contends that the Commonwealth's current argument is, therefore, a reversal of its prior position that tickets are a form of personal property.[4]

In any event, Greenwood maintains that the terms "services" and "personal property" as they are used in the Gaming Act must be construed in accordance with their common and approved usage. Greenwood asserts that the dictionary definition of the term personal property includes tangible movable things which are not real property or intangible property rights, whereas a service is "the act of doing something useful for a person or company for a fee." *Id.* at 22-23 (quoting Black's Law Dictionary (7th ed. 1999). Greenwood avers that, under these definitions, the concert tickets cannot be classified as a service, as they were tangible items which their owners could hold or sell to others at their discretion. Moreover, according to Greenwood, the tickets themselves were physical

---

[3] As we discuss below, *Greenwood Gaming I* addressed whether the language in Section 1103 that personal property distributed "as a result of playing a slot machine," 4 Pa.C.S. § 1103, required the patron to actually play and win a jackpot.

[4] The Commonwealth asserts in its reply brief that it has not been inconsistent, given that, in *Greenwood Gaming I*, it was arguing that, while the tickets themselves might constitute personal property, the right they are conveying is the right to attend a show which constitutes a service — the same argument that it is presently making in the instant matter. Commonwealth Reply Brief at 9.

objects with real value, as reflected in the cost Greenwood paid to third parties to acquire them, as well as the fact that holders of the tickets often retain them after the performance as a keepsake, or trade and sell them.

Greenwood further highlights that the Superior Court has endorsed its view that tickets are a form of personal property in *Klingner v. Pocono Raceway*, 433 A.2d 1357, 1361 (Pa. Super. 1981) (holding that bank which lent money to a racetrack had a valid security interest under the Uniform Commercial Code in the proceeds from the sale of admission tickets to the track because the "tickets and the rights they evidence . . . are subject to ownership, identifiable, and readily transferable from person to person"). Greenwood contends that the tickets can be classified as personal property under this definition as well, inasmuch as the tickets convey an intangible property right to the holder — the right to go to the performance.

Greenwood asserts that we should not utilize the essence of the transaction or true object tests, as the Gaming Act does not authorize such an approach. Instead, as Section 1103 excludes "personal property distributed to a player," 4 Pa.C.S. § 1103, from a casino's GTGR and GTR, Greenwood contends it is the nature of the items which were distributed that must be examined. Here, Greenwood stresses that what was actually distributed to its gaming patrons were the tickets themselves, which are personal property. Further, Greenwood highlights that the true object test has been exclusively applied by the Commonwealth Court to transactions involving sales and use tax, and then only where there is ambiguity concerning whether a particular transaction is subject to such tax. Additionally, Greenwood observes that our Court has never adopted the true object or the essence of the transaction tests in the context of interpreting our sales and use tax statute. Greenwood Brief at 29-30 (citing *Downs Racing v. Commonwealth*, 196 A.3d 603 (Pa. 2018) (declining to adopt the true object test to ascertain whether royalty

payments associated with video poker games are intellectual property exempt from sales taxes); *Dechert LLP v. Commonwealth*, 998 A.2d 575 (Pa. 2010) (refusing to adopt the essence of the transaction test to determine if prepackaged software sold to consumers is subject to sales and use tax)).

In the event we deem the term "services" to be ambiguous, Greenwood contends that the Commonwealth Court properly followed our directive in *Greenwood Gaming I* to strictly construe this term in its favor as the taxpayer. It dismisses the Commonwealth's claims of absurd results arising from Greenwood's interpretation – that it would sanction excluding such things as oil changes simply by tying them to a ticket – as transparent hypothetical schemes to avoid paying the tax, which are of a wholly different character from the commonplace practice of providing tangible personal property in the form of concert tickets.

With regard to the Department of Revenue's interpretation of Section 1103 as set forth in its Department of Revenue Gaming Tax Bulletin 2015-01, Greenwood avers that we should accord it no deference, as it was developed in response to *Greenwood Gaming I,* and, ultimately, in its view, is clearly erroneous because it is inconsistent with the statutory language.

### III. Analysis

The question of whether concert tickets are excludable from gross revenues under Section 1103 is one of statutory interpretation, and, as such, presents a pure question of law over which our standard of review is *de novo*, and our scope of review is plenary. *Dechert LLP*, 998 A.2d at 579. As our Court has oft stated, our paramount goal in interpreting a statute is to "ascertain and effectuate the intention of the General Assembly." *Mission Funding Alpha v. Commonwealth*, 173 A.3d 748, 763 (Pa. 2017); *see* 1 Pa.C.S. § 1921(a). As a general matter, legislative intent may best be discerned

from the plain language of a statute. *Northeast Pennsylvania Imaging Center v. Commonwealth*, 35 A.3d 752, 758 (Pa. 2011). In accordance with this principle, the "[w]ords of a statute are to be construed according to their common and approved usage." *Sivick v. State Ethics Commission*, 238 A.3d 1250, 1259 (Pa. 2020).

We interpreted the statutory language defining GTR, albeit a different aspect of it, in *Greenwood Gaming I*. Therein, we addressed whether awards of cash or personal property "as a result of playing a slot machine" may be deducted only when a patron wins a slot machine jackpot, or more generally because of the act of playing slot machines, win or lose. *Greenwood Gaming I*, 90 A.3d at 711. In doing so, we viewed the phrase "as a result of playing a slot machine" to be ambiguous and turned to principles of statutory construction to interpret it. *Id.* at 714. We ultimately determined that the definition of GTR in Section 1103 set forth exclusions from taxation, and thus ruled that it "must be interpreted strictly in the favor of . . . the taxpayer." *Id.* In strictly construing GTR, we concluded that a casino could deduct from its gross revenue the value of promotional awards generally related to slot machine play, and that the casino was not required to tie the amounts "to the play of a specific slot machine at a specific time." *Id.*

With these principles in mind, we must interpret the relevant language in the definitions of GTR and GTGR. Notably, the definition of GTGR, added by the General Assembly in 2010, is substantially the same as that contained in the definition of GTR.[5] 4 Pa.C.S. § 1103. Because both definitions identically exclude personal property distributed to a player of a table game or a slot machine from a casino's gross revenue, and as both definitions clearly specify that services are not to be excluded as personal

---

[5] The only, inconsequential, difference is that subsection (iii) of the definition of GTGR excludes "the actual cost paid by the certificate holder" for personal property it distributes to a player. 4 Pa.C.S. § 1103.

property, our interpretation of the terms personal property and services – which are not otherwise defined – is applicable to both statutory provisions.

As Justice Felix Frankfurter cogently observed, "legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Addison v. Holly Hill Fruit Produce*, 322 U.S. 607, 618 (1944). Here, the terms personal property and services are not technical terms which have acquired a peculiar meaning within the context of the Gaming Act, and, thus, we ascertain their meaning in accordance with their common and approved usage. *Sivick*, 238 A.3d at 1259. As our Court has explained, in determining such usage, it is proper to consult dictionaries. *Bruno v. Erie Insurance Co.*, 106 A.3d 48, 75 (Pa. 2014).

"Personal property" is principally defined as "an estate or property consisting of movable articles both corporeal, as furniture or jewelry, or incorporeal, as stocks or bonds (distinguished from real property)." *Webster's Unabridged Dictionary* 1446 (2nd ed. 1997); *see also The New Oxford American Dictionary* 1276 (1st ed. 2001) (defining "personal property" as "all of someone's property except land and those interests in land that pass to their heirs"); *Black's Law Dictionary* 1254 (8th ed. 2004) (defining "personal property" as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property"). "Services" is defined chiefly as "the performance of any duties or work for another," *Webster's*, *supra*, at 1750, or "the action of helping or doing work for someone." *The New Oxford American Dictionary*, *supra*, at 1558). *See also Black's Law Dictionary, supra,* at 4267 (defining "service" as "[t]he act of doing something useful for a person or company for a fee.").

We conclude that the concert tickets at issue here fit comfortably within the definition of personal property, but not within the definition of services. Specifically, the

tickets are unquestionably property of a corporeal or tangible character which is not real estate. The physical tickets themselves can be moved freely or transferred by their owner to another and have an inherent value, as evidenced by the fact they are often resold by the holder of the ticket for an amount well in excess of their printed price.[6] Moreover, even after a concert performance has transpired, the physical tickets to the event often retain substantial value as memorabilia which can command significant sums of money by their owners when sold to collectors.[7] Thus, we have little difficulty concluding that concert tickets qualify as personal property as that term appears in the definitions of GTR and GTGR.

By contrast, the tickets as physical instrumentalities do not, in and of themselves, constitute services, as they do not perform any duties or work for their holder. Moreover, while the tickets confer an intangible right on their holder — the right to see a concert performance by an entertainment performer — we likewise conclude they do not qualify as "services" as that term is used in the definitions of GTR and GTGR. "Services," as that term is commonly understood consistent with the above recited definitions, connotes an interactive relationship – often a personal one – between the service provider and the recipient, where the provider directly performs work or a useful act for the individual which he or she would otherwise have to do themselves, such as when a laundry service washes an individual's clothes, a landscaper performs yardwork for a homeowner, or a car wash cleans an individual's car. Additionally, such work or useful acts are accomplished at the direction and control of the individual on whose behalf they are done.

---

[6] StubHub, https://www.stubhub.com/sell/, and Ticketmaster, https://www.ticketexchangebyticketmaster.com/, are examples of the many bustling online marketplaces where ticket owners can sell their concert tickets.

[7] *See, e.g.*, https://www.collectorsweekly.com/paper/ticket-stubs (noting that expired concert tickets have a following among collectors and providing prices for which such tickets are currently being sold).

A concert performance, however, lacks that singular attribute, inasmuch as the featured entertainer engages in an act of unique artistic expression, and, thus, the entertainer does not work for the ticket holder personally, or perform a helpful act for that individual by doing something for the person that he or she would otherwise have to do on their own. Further, as the concert performance itself is the entertainer's own chosen act of artistic self-expression, it is not directed or controlled by the attendee by virtue of his or her status as a ticket holder. The ticket confers on the holder merely the right of admittance to view the artistic performance, and nothing more. As such, a casino patron who uses such a ticket does not receive a personal service when he or she attends such a performance.

While we concede that, in the very broadest sense of the word, entertainment could be viewed as a type of service; our interpretation of services as being those of a personal nature to the casino patron is most consistent with the fundamental characteristics of the other items enumerated in the "comp" exclusions of GTGR and GTR — food, drink, transportation, and lodging. These are all things which a casino patron personally uses and would normally procure on his own, at his own expense. However, the General Assembly has made a policy judgment that whenever a casino provides such things for the patron's personal use, and assumes the cost of such things for the patron as an inducement to wagering at its facilities, it cannot exclude the value of such things from its taxable revenues. It is thus logical to view the prohibition on casinos excluding from their revenues the value of services they provide in the same light – namely, that the service exclusion applies whenever the casino provides personal services to a patron which the casino pays for.[8]

_____

[8] It is for this reason that we must also reject the Commonwealth's contention that treating these concert tickets as personal property would allow a casino to provide other things such as food, drink, transportation, and lodging simply by furnishing its patrons with a

Finally, this interpretation is, as related above, the interpretation advanced by Greenwood in its argument to our Court. Our Court has already determined in *Greenwood Gaming I* that the definition of GTR is to be strictly construed in the casino's favor as the taxpayer. Consequently, this principle of strict construction also leads us to read the "comp" exclusion in GTR, and the identical language contained in GTGR, in a manner which favors Greenwood.

The Commonwealth would have us look past these attributes, however, in favor of a more expansive view of the concert tickets by examining their "true purpose" or "true object," which it claims is the provision of entertainment services by Greenwood to its patrons. We decline to do so. The true object or the essence of the transaction tests which the Commonwealth suggests we should apply are not cited in the Gaming Code as a means by which to assess how casinos' revenues are to be taxed. By contrast, the legislature has expressly specified that this type of test *must* be employed in the calculation of a general use tax. *See* 72 P.S. § 7201(o)(5) ("Where tangible personal property or services are utilized for purposes constituting a 'use,' as herein defined, and for purposes excluded from the definition of 'use,' it shall be presumed that such property or services are utilized for purposes constituting a 'sale at retail' and subject to tax unless the user thereof proves to the department that the *predominant purposes* for which such property or services are utilized do not constitute a 'sale at retail'." (emphasis added)). We will not utilize such an approach in interpreting Section 1103 where the legislature has not directed us to do so. *See Downs Racing, L.P.*, 196 A.3d at 609 (holding that

---

ticket to receive them, or to vicariously provide a personal service to its patrons through a third party, as it would if it gave those patrons tickets for an oil change for their car, or a dinner at a restaurant, and then take an otherwise prohibited exclusion for the value of those things. Our decision does not in any way countenance such practices. Indeed, Greenwood itself tacitly acknowledges that such evasive maneuvers are not permissible under the Gaming Code, as it notably did not seek a refund for the portion of the concert ticket costs in the instant matter attributable to the provision of food.

where "the governing statute and associated regulations are sufficient to resolve the present dispute . . . we are not at liberty to ignore their requirements under the guise of a judicially-fashioned standard along the lines of the [proffered] true-object test"); *see generally In re Canvassing Observation*, 241 A.3d 339, 350 (Pa. 2020) (noting that it is improper to judicially rewrite a statute by engrafting additional statutory requirements "where the legislature has, in the exercise of its policy judgment, seen fit not to do so").

For all of these aforementioned reasons, we conclude that the concert tickets Greenwood gave to its patrons in 2014 constituted personal property within the definition of GTGR and GTR, and were not services. Hence, Greenwood was entitled to exclude their value from its revenues for that year. We therefore affirm the order of the Commonwealth Court.

Order affirmed.

Chief Justice Baer and Justices Saylor, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Saylor files a concurring opinion in which Chief Justice Baer and Justices Wecht and Mundy join.

Justice Wecht files a concurring opinion in which Justice Donohue joins.